FT. WORTH & R. G. RY. CO. v. ALBIN et al.

(Court of Civil Appeals of Texas. Austin. Dec. 20, 1911. Rehearing Denied Jan. 24, 1912.)

CARRIERS (§ 213*)—TRANSPORTATION OF CATTLE—CONTRACT—BREACH—DELAY.

Since it is the usual custom of drovers to feed and water cattle before placing them on the market, where a carrier contracted to ship cattle in time for the market at their destination on the succeeding day, it was no defense to an action for breach of such contract that the cattle arrived in time for such market if they had been offered for sale at once on arrival without taking time for feeding and watering, it not appearing that at the time of delivery they were then in proper condition to go on the market with the expectation of best results without feeding and watering.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 213.*]

Appeal from McCulloch County Court; Harvey Walker, Judge.

Action by George Albin and another against the Ft. Worth & Rio Grande Railway Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Andrews, Ball & Streetman and F. M. Newman, for appellant.

KEY, C. J. Appellees brought this suit against appellant, and upon trial before the court without a jury recovered judgment for $300 for injuries to a shipment of cattle from Brady to Ft. Worth, Tex. The court found that appellant entered into a contract by which it agreed to ship the cattle from Brady to Ft. Worth, Tex., within a reasonable time; that the shipment left Brady about 7 o'clock p. m. on December 12, 1909, and, if shipped with reasonable dispatch and expedition, would have arrived at Ft. Worth on or before 7 o'clock a. m. the following day, and would have been watered, fed, and rested and sold to the best advantage on the forenoon of that day; that the contract was breached and the cattle not delivered to the consignees in Ft. Worth in time to be prepared and sold on the market of that day, except 5 heifers and 33 calves, which were sold that afternoon; that, as a result of such delay in transportation and delivery of the shipment, it was necessary for the consignees to hold the remainder of the cattle until the morning market of December 14th, and that as a result of such holding they were injured by shrinkage in weight, and sold for $300 less than they would have brought, if appellant had complied with its contract and delivered the shipment in Ft. Worth in time for the forenoon market of December 13th.

While we might have decided some of the questions referred to differently, we are not prepared to say that the judge's findings are without evidence to support them. Appellant's main contention is that, as the proof shows that the cattle were delivered to the consignees in time for sale on the Ft. Worth market in the afternoon of December 13th, if the consignees had not taken time to feed and water them before offering them for sale, therefore appellant cannot be held liable for the loss which occurred on account of the cattle's being held over in pens until the forenoon of the 14th, and Railway Co. v. Ball, 107 S. W. 127, is cited in support of that contention. That case seems to support the proposition urged; but, with due respect to the Court of Civil Appeals which rendered that decision, if it was made upon a state of facts similar to the facts presented in this case, we believe the decision is unsound and should not be followed. The proof in this case shows that when cattle are shipped to market, and after they are delivered by the carrier to the consignee, it is customary in the usual course of business to feed and water them before placing them upon the market; and we hold that, when a carrier contracts to deliver live stock or other property at the place of destination in time for sale on the market of a particular day, the contract signifies that the delivery must be made within time to prepare the property for and place it upon the market in the usual and customary manner. It is perhaps a matter of common knowledge, and no doubt carriers of live stock to market are aware of the fact that, when such stock have reached their destination, their weight will be materially increased by feeding and watering them, and their value thereby enhanced, before offering them for sale by weight. Appellant's contention seems to be that the true measure of damage was the difference in the value of the cattle immediately after they were delivered to the consignees, and what would have been their value if there had been no delay and they had been sold on the forenoon market of that day. This might be true if at the time of delivery the cattle were then in proper condition to go on the market, with the expectation of best results. But if, in order to obtain the best results, it is necessary to feed and water the cattle before placing them on the market, and if such is the usual course of business, then appellant's contention is not believed to be sound. Furthermore, the record does not indicate that if the course suggested by appellant had been pursued, and the cattle sold without being fed and watered, the loss would have been less than it was.

All the questions presented in appellant's

brief have been considered, and our conclusion is that the judgment should be affirmed, and it is so ordered.

Affirmed.