ST. LOUIS & S. F. R. CO. v. WHITE et al.

(Court of Civil Appeals of Texas. Dallas. Nov. 15, 1913. Rehearing Denied Dec. 6, 1913.)

1. CARRIERS (§ 227*) — TRANSPORTATION OF CATTLE—ROUGH HANDLING — EVIDENCE — PLEADING AND PROOF.

Where, in an action against a carrier for injuries to cattle due to rough handling en route, the complaint alleged that the cattle while on defendant's cars were handled in a rough manner, the cars being rammed and jammed together, bruising and injurying the cattle, etc., evidence that the rough handling was due to the necessity of often stopping the train suddenly because another of defendant's trains, preceding that on which the cattle were being transported, was being pulled by a broken-down engine, which would suddenly be overtaken by the cattle train, was admissible, though plaintiff established a prima facie case by proving delay and rough handling.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. § 227.*]

2. CONTINUANCE (§ 31*)—GROUNDS—EVIDENCE —SURPRISE.

In an action for injuries to cattle by rough handling en route, defendant was not entitled to a continuance for surprise because of the admission of evidence that the rough handling was due to sudden stoppages, on account of a preceding train being pulled by a broken-down engine.

[Ed. Note.—For other cases, see Continuance, Cent. Dig. §§ 96–98; Dec. Dig. § 31.*]

3. CARRIERS (§ 213*) — TRANSPORTATION OF CATTLE—DELAY—DAMAGES — MARKET DECLINE.

Where a carrier contracted to transport and deliver cattle in time for a particular market, it was bound to make the delivery in time, so that the cattle might be fed and watered, according to custom, before being placed on the market; and hence, where there was no time for this before the market closed after the delivery at destination on the day the cattle were to be sold, the carrier was liable for a loss due to decline in the market on the succeeding day.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 920–922; Dec. Dig. § 213.*]

Appeal from District Court, Kaufman County; F. L. Hawkins, Judge.

Action by J. B. White and others against the St. Louis & San Francisco Railroad Company and others. Judgment for plaintiffs against the St. Louis & San Francisco Rail-

road Company alone, and it appeals. Affirmed.

Andrews, Ball & Streetman, of Houston, and A. H. Dashiell, of Terrell, for appellant. Wynne, Wynne & Gilmore, of Wills Point, for appellees.

RASBURY, J. At a former term this case was affirmed without considering the assignments of error for the reason that same did not comply with rules 24 and 25 (142 S. W. xii), recently promulgated by the Supreme Court for the government of the Courts of Civil Appeals. Subsequent to the affirmance of the case the Supreme Court held the rules so promulgated to be in violation of articles 2061 and 2062, Revised Statutes 1911, in requiring litigants to set out in a motion for new trial alleged error in giving or refusing charges or other action of the trial court appearing of record. Missouri, Kansas & Texas Railway Co. v. Beasley (Sup.) 155 S. W. 183; Benton v. Kuykendall et ux., 160 S. W. 438, decided by this court October 25, 1913. For the reasons stated in the opinion last cited, our former opinion in this case will be withdrawn, the assignments considered, and what we here say stand as our opinion in the case.

Appellee White sued appellant and Texas Midland Railroad and Paris & Great Northern Railroad Company for $1,259.04, damages alleged to have resulted to a shipment of cattle consigned by appellee to said carriers for transportation to St. Louis, alleging such damages to be due to rough handling and delay, and upon trial before jury recovered verdict for $755.42 against appellant. The trial court instructed verdict for the Texas Midland Railroad and the Paris & Great Northern Railroad Company.

In lieu of a statement of the pleading and the evidence, we will, whenever it becomes necessary, state the same while considering the particular assignment of error.

[1] The first assignment complains of the action of the court in permitting appellee's witnesses to testify upon trial that the cause of the rough handling was due to the fact that ahead of appellant's train containing the cattle, while en route to destination, was another of its trains pulled by a broken-down or defective engine, which would suddenly stop and be overtaken by the train hauling appellee's cattle, compelling it, in turn, to suddenly stop, and by reason of which appellee's cattle would be thrown to the floor and upon each other, and to which their injuries were, in a large measure, attributable. The precise point is that, appellee having alleged only rough handling and delay, proof of the cause of such rough handling was inadmissible; in short that the allegations and proof did not correspond. It is of course elementary that the proof in a suit at law must correspond with the allegations of the complaint. Measured by

that rule, we are of opinion that the evidence complained of was properly admitted. The allegation, in substance, is that the cattle while on appellant's cars were handled in a very rough manner; the cars containing them being rammed and jammed together, bruising and injuring them, etc. We think appellee established a prima facie case when the delay and rough handling was shown, yet when appellee assumed the additional and unnecessary duty of also showing the cause of such rough handling and ramming and jamming of the cattle, it cannot intelligently be maintained that such proof was in any respect a variance from the allegations of the complaint. The general rule is that, in order to constitute material variance between the allegata and probata, the variance must be in the nature and elements of the cause of action as distinguished from proof of circumstances, incidents, or causes which contributed to the alleged cause of action, but not particularized in the complaint. By way of illustration, in the case at bar the claim or cause of action was rough handling. Proof of the facts, incidents, or circumstances which caused the rough handling, while not necessary to maintain appellee's cause of action, was in no sense proof of facts tending to establish a cause of action at variance with the one alleged. Appellant cites as in point T. & P. Ry. Co. v. Stewart, 43 Tex. Civ. App. 399, 96 S. W. 106. As we interpret that opinion, the court there held that if the plaintiff in that case desired "to prove that the car in which his horses were shipped was defective and resulted in injury to them," he should have so alleged in his pleading. Here it is not asserted that the cattle were injured by reason of the defective or broken-down engine on the train ahead of the train containing appellee's cattle, but by carelessly and negligently and suddenly stopping the cars containing appellee's cattle, caused by running in too close proximity to or in suddenly overtaking the train ahead pulled by the defective or crippled engine. We think the assignment should be overruled.

[2] The second assignment complains of the refusal of the court below to permit appellant to withdraw its announcement of ready and continue the case because of surprise at the testimony of the witnesses mentioned in our discussion of the first assignment of error, and relating to the cause of the sudden stops of the train transporting appellee's cattle. For the reason stated in discussing the first assignment of error, and because the proof of the cause of the stops was reasonably to be anticipated and in law is insufficient to constitute surprise, this assignment is also overruled. S. A. & A. P. Ry. Co. et al. v. Martin et al, 49 Tex. Civ. App. 197, 108 S. W. 981; St. L. & S. F. R. Co. v. Cartwright, 151 S. W. 630.

The third, fourth, and fifth assignments of error in effect attack the verdict and judgment on the ground that the evidence is insufficient to support same. We have carefully read the testimony incorporated into the brief of counsel for both appellant and appellee, and in our opinion the evidence on the three material issues in the case—that is delay en route, rough handling, and decline in the market—sustains the verdict of the jury. We might, in deference to counsel, analyze and compare the evidence of both sides in order to present the reason for our conclusions, but, since it is a matter finally for this court to determine after reading the evidence, we do not believe we will be expected to do more than carefully examine the same and state our conclusions, which are that it cannot be said, from an examination of the evidence, that the verdict of the jury on either issue is manifestly against the evidence, or inadequate with or contrary thereto; and, until the evidence presents such a case, we are without authority to disturb the verdict.

[3] The sixth and seventh assignments of error also attack the verdict and judgment on the ground that the evidence was insufficient to sustain same. The point made under said assignments is that appellee pleaded and offered testimony to prove that there was a decline in the market of 15 cents per hundred pounds between Monday, the day the cattle should have been delivered and sold, and Tuesday, the day they were actually sold, and recovered for such decline. The evidence shows a decline of 15 cents per hundred pounds between the dates indicated. It also shows that the cattle should have arrived early Monday morning, but were in fact delivered Monday at 2:30 p. m., and that the market closed at 3 p. m. Evidence also shows that the cattle arrived too late Monday to enable those in charge thereof to profitably place them upon the market, since it would have required an hour or an hour and a half to shape them up for market.

These assignments really challenge the legal right of appellee to recover for a decline in the market, rather than that the evidence is insufficient, since it is undisputed that there was a decline in the market, as we have just stated. Upon this question the Sixth Court of Civil Appeals has held, in C., R. I. & G. Ry. Co. v. Young & Ball, 107 S. W. 127, as follows: "Alluding to the record, the evidence shows that the cattle were delivered at the stockyards, the place of the stock market, by the Belt Railway Company, the agent of appellant, at 2:20 p. m., and the employés of the stockyards company unloaded the cattle into pens selected by the consignee. The stock market closed at 3 o'clock p. m. Appellees explain that, before cattle are ready for sale, after they are unloaded from the cars, they should be watered and fed, and given some time in which to rest, and that this could not have been done before the market would have closed for the day. We think that the record in this case shows

a delivery of the cattle by the appellant through its agent, the Ft. Worth Belt Company, to the consignee that same evening, and within time for the stock market that evening. A carrier of live stock is not liable for the damages occurring to the live stock after the same have been actually or legally delivered to the shipper or consignee. If appellees shipped the cattle for the purpose of selling same on the special market of October 17th, and the cattle were delivered at 2:20 p. m., in time for that evening's market, and appellees delayed the sale on that market, then the railway company was not chargeable with any subsequent damage or loss occurring after the delivery; nor could appellees claim that, because the cattle could'not be rested and fed and watered by them after the delivery and before the market closed, it was not a delivery in time for the market of that evening."

The Third Court of Appeals, upon the same question, in F. W. & D. G. Ry. Co. v. Albin, 142 S. W. 933, has held as follows: "Appellant's main contention is that, as the proof shows that the cattle were delivered to the consignees in time for sale on the Ft. Worth market in the afternoon of December 13th, if the consignees had not taken time to feed and water them before offering them for sale, therefore appellant cannot be held liable for the loss which occurred on account of the cattle's being held over in pens until the forenoon of the 14th, and Railway Co. v. Ball, 107 S. W. 127, is cited in support of that contention. That case seems to support the proposition urged; but, with due respect to the Court of Civil Appeals which rendered that decision, if it was made upon a state of facts similar to the facts presented in this case, we believe the decision is unsound and should not be followed. The proof in this case shows that when cattle are shipped to market, and after they are delivered by the carrier to the consignee, it is customary, in the usual course of business, to feed and water them before placing them upon the market; and we hold that, when a carrier contracts to deliver live stock or other property at the place of destination in time for sale on the market of a particular day, the contract signifies that the delivery must be made within time to prepare the property for and place it upon the market in the usual and customary manner. It is perhaps a matter of common knowledge, and no doubt carriers of live stock to market are aware of the fact that, when such stock have reached their destination, their weight will be materially increased by feeding and watering them, and their value thereby .enhanced, before offering them for sale by weight."

The reasons for the conflicting rules adopted by the two courts are clearly and succinctly stated in the opinions from which we have quoted, and we can add nothing thereto. Deeming the views in the latter case as more in consonance with our views, we adopt same in disposing of the assignments under discussion.

We have carefully examined the remaining assignments of error, some of which present, in different manner, issues already discussed, and because same in our opinion present no reversible error they are overruled.

The judgment is affirmed.