TEXAS & NEW ORLEANS RAILWAY COMPANY v. JOHN M. WHITE.

Decided February 23, 1901.

1.—Damages—Measure of, for Injury to Land—Market Value of Sand Taken.

Where defendant, in digging a pit on his own land, caused the land of plaintiff, containing valuable sand, to slide into the pit, and appropriated such sand to his own use, the measure of plaintiff's damages was the market value of the sand, and not the difference which was thereby made in the market value of plaintiff's tract.

2.—Evidence of Market Value—Incompetent Witness.

A witness is not qualified to testify as to the market value of sand where his testimony shows that he is only repeating the statement of another as to such value.

3.—Facts Not Sustaining Verdict as to Amount of Sand Taken.

See the opinion for facts held not to show as large an amount of sand taken as is allowed for in the verdict and judgment.

Appeal from Liberty. Tried below before Hon. L. B. Hightower.

*Baker, Botts, Baker & Lovett* and *Greer & Chester*, for appellant.

*Stevens & Martin*, for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against appellant for damages for the removal of sand and soil from land owned by appellee. A trial by jury resulted in a verdict and judgment for appellee for $200, from which the railway company has appealed.

It was shown that appellant owned a tract of land adjoining appellee's, and had, in using the soil and sand for its own and other purposes, dug a pit about 20 feet deep, and so near to appellee's land as to cause it to slide or cave into the pit. It was shown that the land thus taken from appellee's tract was of three kinds. Part of it was "moulding sand," scarce and valuable. This consisted of a strata about 2½ feet in depth. The surface was black sand, or soil of small value, and about one foot in thickness. The remainder was building sand. The black sand had no peculiar value. The moulding sand was worth about 32 cents per cubic yard as it lay, and the building sand about 16 cents per cubic yard. While it does not affirmatively appear from the record that the sand and soil which slid into appellant's pit were appropriated by appellant or those acting under its authority, such is the fair inference from the testimony.

Appellant complains that the true measure of damages is the difference between the value of appellee's tract of land just prior to and just after the alleged injury, and that the court erred in not so instructing the jury. We are of opinion that the assignment is without merit. We have been able to find no Texas case directly in point, but the question has been decided adversely to appellant's contention in Merriwether v.

Bell (Ky.), 58 Southwestern Reporter, 987; and a like rule is announced in Mueller v. Railway, 31 Missouri, 262. In May v. Yappen,. 23 California, 306, it is held that the measure of damages for the wrongful taking of gold-bearing earth is its value at the time it is separated from the surrounding soil and becomes a chattel. To the same effect is Goller v. Fett, 30 California, 481.

In Forsyth v. Wells, it is held that the measure of damages for wrongfully taking coal from the land of another is the value of the coal in place and such damage to the land as the mining may have caused. In Railway v. Wallace, 74 Texas, 581, it was held by our Supreme Court that it is the right of the owner of land which has been damaged to have his damage measured by the extent of the injury to the land used for any lawful purpose to which he might appropriate it, or to which it was adapted.

Here, if the earth taken from appellee's land is indeed valuable for the purposes named, and the company, or some one in its stead, has in fact appropriated the sand so taken and secured the market value therefor, then to compel appellee to accept as compensation only the general damage thereby done to the entire tract would permit the appellant to profit by its wrong. We think it clear that the correct measure of damages in such case is laid down in the authorities cited, and that the trial court did not err in so charging the jury.

Appellant complains of the admission of the testimony of the witness Cameron as to the market value of the sand. We are of opinion that the admission of this testimony was error, for the reason that the witness did not qualify himself to speak as to the market value of the sand. His own statement showed that he was but repeating the statement of another.

Appellee claims that its admission, if error, was harmless, as the witness Delery testified to the same facts. If this were altogether true, perhaps under the facts of this case its admission would have been harmless, but their testimony is by no means identical. Cameron stated that he was informed that the moulding sand was worth $20 for 15 cubic yards. Delery testified that its net market value was 32 cents. Indeed, the only testimony in the case from which its market value could be legally determined was that of Delery.

In this connection we may properly consider the complaint that the verdict and judgment are not supported by the evidence on the question of amount. The extent of the "cave" or "slide" is variously estimated by the witnesses, some placing it as high as 70 feet in length and 60 feet in width, with a depth varying from 5½ to 20 feet. Since the pit on appellant's land had a depth of only 20 feet, it is not possible that the depth of the pit on appellee's land could have been as much as that at any point. It is not claimed that appellant actually went upon appellee's land and removed sand, and the original sand pit was no nearer to plaintiff's land at the nearest point than five feet. None of plain-

tiff's witnesses undertake to give with any accuracy the average length and breadth and depth of the hole made by the "slide," but estimate its maximum length and breadth. The amount of sand lost to plaintiff is capable of exact and accurate ascertainment, and the engineer who actually measured the excavation places the amount lost at 675 cubic yards. This evidence is unassailed by any witness who claims to have found with any accuracy the amount lost. Those who testify to a greater amount have merely looked at the place and estimated its length, depth, and breadth. Not even plaintiff gives its average length and breadth, though he is the only witness on his side who claims to have measured it, nor does he give an estimate of the amount of sand lost to him.

His contention, therefore, that the verdict can be sustained by taking the highest estimate as to length, breadth and depth and basing a calculation thereon is not tenable, for the evidence of himself and his witnesses furnishes no reliable data upon which to base a calculation. No witness stated that the average width was 50, 60, or 70 feet, but the greatest width was variously placed at those figures. It was the duty of plaintiff, if he did not wish to rely on the engineer's estimate, to have furnished the jury with some reasonable basis by which to arrive at the amount of sand lost, and this he has failed to do. We have been unable by any reasonable estimate to place the quantity at the figures contended for by plaintiff. Nor is the record in such condition as to authorize us to require a remitter. While the estimates opposed to those made by the engineer are insufficient to authorize the verdict, they can not be wholly ignored by this court, and since the quantity of sand lost can be accurately ascertained, we are of opinion the judgment should be reversed and the cause remanded. No other questions are presented which require notice at our hands.

*Reversed and remanded.*