Texas and Pacific Railway Company v. J. Y. Stewart.

Decided June 9, 1906.

**1.—Pleading—Special Damage—Charge.**

Where the plaintiff sought by his pleading to recover only special damages caused by the negligence of the carrier in delaying the transportation of live stock whereby plaintiff was prevented from complying with a contract theretofore made by him, it was error for the court to submit to the jury an issue as to depreciation in the market value of the stock by reason of delay in the transportation.

**2.—Opinion Testimony, When Admissible.**

The question being whether or not the shipment of stock in question compared favorably with a previous shipment, it was not error to permit the plaintiff to tesify as to his opinion on the matter, since such fact is altogether a question of opinion evidence.

**3.—Cause of Injury—Pleading.**

A general allegation of rough handling would not admit proof of injury to stock caused by a defective car.

**4.—Contract of Shipment—Negligent Delay.**

Because a contract of shipment did not bind the carrier to deliver the shipment at any particular time, the plaintiff was not thereby prevented from proving, under proper pleading, that the carrier was guilty of negligent delay in transporting the shipment.

Appeal from the County Court of Mitchell County. Tried below before Hon. W. B. Crockett.

*Ed. W. Smith,* for appellant.

*F. G. Thurmond* and *Royall G. Smith,* for appellee.

SPEER, Associate Justice.—This is the second appeal in this case and an examination of the opinion on the first appeal, reported in 12 Texas Ct. Rep., 725, will disclose the nature of the case. We must again reverse the judgment of the trial court for errors in his charge. The

eighth paragraph of the court's charge in part reads: "Therefore you are charged that if under the preceding paragraphs of this charge you have found defendant not liable for the inability, if any, of the plaintiff to fill the Pinkerton and the Dees contracts, that the measure of damages in this case is the difference, if any, in the market value of said horses at their destination, delivered at the time and in the condition in which they were, and their market value at their destination delivered at the time and in the condition in which they should have been." This is construed by both parties, and properly so we think, to mean that the measure of appellee's damages would be as indicated in the event the jury found that appellant was not liable for the loss of either the Pinkerton or the Dees contract. This is erroneous for the reason that appellee sought only to recover the special damages incident to a loss of the sales under these contracts, and nowhere made a case entitled him to recover for depreciation in the market value of his horses. Indeed, it is nowhere alleged that the contract price of $27.50 per head at Mineola, or $30 per head at Texarkana, represented the market value of the animals at those places if delivered with proper care, or that they would have had a market value at all. For aught that appears from the pleadings, these contracts of sale may have been very advantageous ones, exceeding the real market value of appellee's animals, and indeed, he may have actually realized their full market value when they were finally sold. Since appellee alleged no other loss than that of the sales under the Pinkerton and Dees contracts, he should not have been permitted to recover any other.

It is insisted by appellant that notice to the foreman of its stockyards at Fort Worth of the sale to Dees prior to the shipment of the stock from Fort Worth to Texarkana, would not be binding upon it, since such agent had no authority in the premises. But upon another trial the extent of this agent's authority may be shown, and this question thus eliminated.

It seems that appellee's sale of the horses to Pinkerton at Mineola was conditioned upon their comparing favorably with a previous shipment, and on the trial he was permitted to testify that they did. It is true that this involved a conclusion or opinion of the witness, but that is no valid objection to the testimony, since such fact is altogether a question of opinion evidence. No point is made that the witness was not qualified to give his opinion upon the subject.

Upon another trial, if appellee desires to prove that the car in which his horses were shipped was defective and resulted in injury to them, he should amplify his pleadings. It can hardly be said that a general allegation of rough handling would be sufficient to admit proof of a defective car. We can not see, however, that proof of such fact would be at all relevant to any issue under the pleadings as they now stand, since undeniably the injured condition of the horses had nothing to do with the loss of either sale.

Appellee's testimony to the effect that appellant's delays caused him to miss the sale to Pinkerton at Mineola was not contradictory of the written contract of shipment stipulating that the stock were not to be transported within any specified time, nor to be delivered at any particular day, nor in season for any particular market, because he alleged, and the evidence tended to show, that he would have reached Mineola

in time to have consummated the sale to Pinkerton but for the negligence of appellant.

In view of another trial we suggest that appellant's sixth assignment of error raises a point that should be observed in the charge. If the contract price under the Dees contract was $20 per head and freight, and the jury should find that appellant was liable for the loss of the Pinkerton sale only, then the measure of damages would be, as we indicated in the former opinion and as charged by the court, the difference between the contract price of the horses at Mineola, and the sum brought at Fort Worth—$20 per head and freight.

For the error in the court's charge the judgment is reversed and the cause remanded.

*Reversed and remanded.*