ST. LOUIS, SAN FRANCISCO & TEXAS RAILWAY COMPANY, ET AL.,
v. J. M. ADAMS.

Decided April 14, 1909.

**1.—Evidence—Declaration of Agent.**

The declarations of an agent in respect to a matter within the scope of his apparent authority, in the line of his duty and at the time and place a negligent act complained of occurred, are competent evidence. It is otherwise as to such declarations in the nature of a narrative after the act has occurred.

**2.—Same—Harmless Error.**

The admission of improper evidence over objection of a party becomes harmless when other evidence to the same effect is in the record without objection.

**3.—Carrier of Freight—Conversion—Measure of Damage.**

When a carrier of cattle negligently put the cattle in infected pens en route to destination, whereby the cattle could not lawfully be carried to destination and the carrier sold them at said pens, the shipper's measure of damage was the market value of the cattle at their destination at the time they should have arrived there.

**4.—Depositions—Objections—Practice.**

Objections to the manner and form of taking depositions should be made before the trial commences.

Appeal from the County Court of Hardeman County. Tried below before Hon. J. C. Marshall.

*C. H. Yoakum* and *Decker & Clarke*, for appellants.—The court erred in permitting J. M. Adams, plaintiff, to testify that the man in charge of loading and unloading stock at Sapulpa yards for defendant companies told him that through a mistake he unloaded one car of plaintiff's cattle in the quarantine pens and that he didn't know what to do about it, and asked him to go with him and see the agents about it, because it was not shown that said man who loaded and unloaded the cattle nor the agent referred to had authority to bind defendants by statements that were prejudicial to and imputing negligence to defendants, or that such statements were within the scope of his authority or in the line of his duties. S. L. & S. F. Ry. Co. v. Easley, McAdams & Co., 94 S. W., 206; Waggoner v. Snoddy, 85 S. W., 1134; F. W. & D. C. Railway v. Snyder & DuPree, 89 S. W., 1119; Frisco Railway v. Lock, 70 S. W., 456.

To render the declarations of an agent admissible against the principal, such declarations must have been made concerning an act within the scope of the authority of the agent, and at the time the act was being performed by the agent. If the declaration be made before

or after the act was done, it is not a part of the res gestae and therefore not admissible. Waggoner v. Snoddy, 85 S. W., 1134; S. A. & A. P. Ry. Co. v. Robinson, 11 S W., 327; Mechem on Agency, sec. 714.

The court erred in permitting the witness Harper Speer to testify that the man in charge of loading and unloading cattle at Sapulpa yards for the defendant companies stated to him in a conversation in April, 1908, that plaintiff Adams' cattle were through mistake unloaded in the quarantine pens at Sapulpa, because it was not shown that the man to whom witness referred had any authority to bind defendants by statements prejudicial to and imputing negligence on the part of defendants, or that such statements were within the scope of his authority and in the line of his duties; and because such statements were made a long time after the time to which they related and were therefore not a part of the res gestae and was hearsay.

The court erred in that part of his charge to the jury, giving the measure of damages for the cattle that arrived at Coshocton, Ohio, as follows: "The measure of damages for the cattle that you find were injured by the negligence of defendants through such negligence as you find from the evidence said defendants responsible for, will be the difference in their market value in the condition they should have arrived in Coshocton, Ohio, but for the negligence of defendants, and their market value in the injured condition they did arrive at Coshocton, Ohio, if they were injured, etc.," in that said charge tells the jury that the injury to the cattle was caused by the negligence of defendants.

The court erred in the following part of his charge to the jury: "As to the cattle that were shipped on to Coshocton, Ohio, the measure of damage for the cattle that you may find were injured through such negligence as you may find from the evidence said defendants responsible for, will be the difference between their market value in the condition they should have been in at Coshocton, Ohio, but for the negligence of the defendants and their market value in the condition they did arrive in at Coshocton, Ohio, if they were injured," in that said charge assumes and so informs the jury that there was injury to said cattle and negligence on the part of defendants, and is upon the weight of the evidence.

The court erred in the following part of his charge to the jury: "If you believe from the evidence that the plaintiff's cattle while in the care and control of defendants and while on their line of road were injured and damaged by rough and improper handling and unreasonable delays in transporting said cattle by defendants or their employees, and that said cattle were delayed for an unreasonable length of time and improperly handled by defendants or their employees while under their care and control, and on their line of road, and thereby injured and damaged, and such delays and rough handling, if any, on defendants' line of road was negligence on the part of defendants or their employees, and such unreasonable delays and improper handling of said cattle was the cause of such injury and damage to said cattle, if they were injured and damaged, then you will find for plaintiff, etc.," in that the court assumes that there was unreasonable delay and improper handling of said cattle and so informs the jury

and invades the province of the jury and the court calls the jury's attention to the unreasonable delays and improper handling of said cattle, while there is no evidence or pleading to support it, and such language tended to create the impression on the minds of the jury that the court believed there was unreasonable delays and improper handling.

*M. M. Hankins* and *D. E. Magee,* for appellee.

NEILL, ASSOCIATE JUSTICE.—Appellee brought this suit against the St. Louis, San Francisco & Texas Railway Company and the St. Louis & San Francisco Railway Company to recover $743.30 damages to a shipment of three hundred head of calves delivered to defendants at Quanah, Texas, on the 20th of October, 1907, to be transported thence over their road to St. Louis, Missouri, and there delivered to their connecting carriers to be carried from there and delivered to plaintiff at Coshocton, Ohio.

The negligence charged against defendants was delay and rough handling between Quanah and St. Louis, by reason of which the animal's value was diminished one dollar per head; and that one car containing sixty-two head of the calves was unloaded en route at Sapulpa by defendants and negligently placed in their quarantine pens at their yards at that station, in consequence of which they could not lawfully be carried to their destination, and were sold by defendants at St. Louis for $12.50 per head, and that had it not been for such negligence they would have been carried to Coshocton, where they would have brought $20, whereby plaintiff lost $7.15 per head on said carload of calves.

The defendants answered by a general denial, and pleaded specially certain stipulations in the contract of affreightment in limitation of their common law liability as common carriers.

The trial of the case resulted in a verdict and judgment against the defendants for the damages sued for.

*Conclusions of fact.*—The evidence was reasonably sufficient to warrant the jury in finding that the defendants were guilty of delay and of negligent handling of the calves in transportation between Quanah and St. Louis, and that by reason of such negligence the market value of those which arrived at Coshocton, Ohio, was one dollar less per head in their damaged condition than it would have been had it not been for such negligent delay and rough handling.

The evidence shows beyond question that one car load of sixty-two head of the calves was negligently placed by the defendants in their quarantine pens at Sapulpa, by reason whereof they could not be delivered to plaintiff at Coshocton, but were sold by defendants at St. Louis and brought $7.50 less per head than they would have sold for at their destination had they been transported there with the other part of the shipment; and of the proceeds of sale $681.22 were paid to plaintiff.

*Conclusions of law.*—1. The testimony of plaintiff as to what

defendants' agent at Sapulpa said to him when the cattle were there in regard to a carload of them being placed in the quarantine pens, is not obnoxious to the objections urged by the first assignment of error, because the declarations of the agent were in respect to a matter within the scope of his apparent authority, were made in the line of his duty and at the time and place the negligent act complained of occurred. However, it is wholly immaterial whether such declarations were admissible or not, since the undisputed evidence shows that a carload of the cattle were placed in the quarantine pens by defendants' employees at Sapulpa, and that plaintiff was damaged in consequence of such act of negligence as alleged in his petition.

2. It was undoubtedly error for the court to admit in evidence the testimony of the witnesses Speer and Harper, complained of in the second and third assignments of error, as to what the man charged with the duty of loading and unloading cattle for defendants at Sapulpa told them about unloading a car of plaintiff's cattle at that station in the quarantine pens; because such declarations were made to each of the witnesses long after the negligent act spoken of by declarant occurred. (Waggoner v. Snody, 98 Texas, 512.) But such errors could not possibly have injuriously affected the defendants, because the act of negligence to which the declarations testified to relates was indisputably shown by other evidence free from objection.

3. It is urged by the fourth assignment of error that the court erred in admitting evidence as to the market value of the carload of calves at East St. Louis which had been placed in the quarantine pens and were sold at that place by the order of defendants, the objections being that the measure of damages for conversion is the market value of the property at the time and place of conversion. If such rule was applicable in a case like this, it could not be said that such evidence was inadmissible; for if defendants can be regarded under the facts in this case as having converted plaintiff's property, it can not be said that the conversion actually occurred until the calves were offered for sale by defendants in East St. Louis. But, in this case, the sale of the cattle was the natural sequence of defendant's negligence in placing the calves in the quarantine pens at Sapulpa. When this occurred, the cattle could not be legally carried to Coshocton but were required by the quarantine authorities to be sold by defendants at East St. Louis. Therefore, the rule that the measure of damages where a common carrier negligently fails to transport the property to its destination is the value of the property less the freight, if unpaid, at the time and place it should have been delivered, is the one which applies in this case. As the plaintiff was paid $681.22 of the proceeds of the sale, he was entitled to recover the difference between that amount and the market value at Coshocton at the time the cattle should have arrived there, had it not been for defendants' negligence, which difference was $443.30. Really it is a matter of no moment, so far as plaintiff is concerned, what the market value of the calves was in East St. Louis when sold; for plaintiff was entitled to recover of defendants their market value at Coshocton at the time they should have arrived there, but for their negligence.

4. The fifth assignment of error, as it appears in the record, is not

copied in appellants' brief; but is broken up and its several subdivisions copied separately, and propositions presented under each of them. This is hardly in compliance with the rules of this court. But as it does not appear from the statement under the several propositions that the objections to the deposition, they being as to the manner and form of taking, were made as required by article 2289, Rev. Stats. of 1895,—it appearing from the bill of exceptions that the objections were made when the deposition was offered in evidence,—there was no error in the court's overruling them. El Paso & S. W. Ry. Co. v. Barrett, 46 Texas Civ. App., 14.

5. The fourteenth, eighteenth and nineteenth assignments, which complain of the court's charge, are overruled; because the charge correctly presents the law of the case as made by the pleadings and evidence. There is no error in the judgment and it is affirmed.

*Affirmed.*