TEXAS & P. RY. CO. v. CROWDER et al [†]

(Court of Civil Appeals of Texas. El Paso. March 26, 1914.)

1. CARRIERS (§ 205*) — TRANSPORTATION OF ANIMALS—QUARANTINE REGULATIONS.

Where cattle are to be shipped from the quarantined area in Texas into the area outside the quarantine line, the duty of complying with the government regulations is primarily that of the shipper, so that if he has been relieved of the duty and the same has been imposed on the carrier, it is the shipper's duty to plead and prove it; the dipping of the cattle before crossing the line being no part of the contract of shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 918, 920, 923; Dec. Dig. § 205.*]

2. CARRIERS (§ 227*) — TRANSPORTATION OF CATTLE—QUARANTINE REGULATIONS—FAILURE TO FULFILL.

Where plaintiff contracted for the transportation of certain cattle from the quarantined area in Texas to outside the quarantine line, and failed to plead and prove that the carrier was charged with the duty of dipping the cattle or complying with the quarantine regulations, it could not be held for any damages resulting from the failure to dip the cattle or to deliver them at destination, because it was forbidden by law to transport them over the line.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 232, 953–956; Dec. Dig. § 227.*]

3. CARRIERS (§ 229*) — TRANSPORTATION OF ANIMALS—CONVERSION.

Where a carrier was forbidden by law to transport certain cattle to destination over the quarantine line, and some of the cattle died and others were sold, at a point short of destination, the carrier's conversion, if any, occurred there, and the measure of damages was the reasonable market value of the cattle at that point, and not at destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

4. CARRIERS (§ 229*) — TRANSPORTATION OF CATTLE—SALE.

Where cattle are sold by a carrier under Rev. St. 1911, arts. 726, 728, authorizing such sale when cattle are unclaimed for 48 hours, there is no conversion. and the owner may only recover the balance of the proceeds after deducting expenses, etc.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 930, 963, 964; Dec. Dig. § 229.*]

Appeal from Martin County Court; A. C. Eidson, Judge.

Action by T. S. Crowder and others against the Texas & Pacific Railway Company. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

Douthit & Smith, of Sweetwater, W. L. Hall, of Dallas, and John B. Howard, of Midland, for appellant. A. L. Green, of Van Horn, and S. W. Pratt, of Stanton, for appellees.

HARPER, C. J. This suit was instituted in the county court of Martin county, Tex., by T. S. Crowder and F. W. Flanigan, partners, composing the firm of Crowder & Flanigan, plaintiffs below and appellees herein, against the Texas & Pacific Railway Company, defendant below and appellant herein, for conversion of a car load of cattle, consisting of 39 head, shipped from Lindale, Smith county, and consigned to Stanton, Martin county, on December 28, 1911, plaintiffs suing for the alleged total value of·said cattle in the sum of $953, plaintiffs alleging that they tendered said cattle to the International & Great Northern Railroad Company at Lindale, and entered into a written contract with said railroad company, whereby the latter contracted with plaintiffs to transport said cattle and deliver same to its connecting carrier the defendant, the Texas & Pacific Rail-

way Company, to be transported by the latter and delivered at Stanton to the plaintiff F. W. Flanigan; that said International & Great Northern Railroad Company accepted and received said cattle, and transported them to Mineola, and there delivered them to the Texas & Pacific Railway Company, but that the latter did not carefully transport and deliver said cattle to plaintiff at Stanton, as was its duty under the law, but instead retained possession of said cattle and appropriated same to its own use and benefit, to plaintiff's damage in the total value of said cattle, amounting to $953. The defendant answered by general demurrer and general denial, and specially answered that if it sold or converted plaintiffs' cattle, which it expressly denied, it did so for the reason that upon arrival of said cattle at Ft. Worth from Lindale, it became necessary, under the laws and quarantine rules and regulations of the state of Texas and of the United States, to dip said cattle in some mixture prescribed by said authorities before the same could be further transported towards their destination; that upon arrival of said cattle at Ft. Worth the plaintiffs abandoned same, and refused to have anything further to do with them, or to authorize or require their dipping, as required by the authorities mentioned, and that this defendant was not authorized or required to have such dipping done; that said dipping of said cattle was also rendered impossible by reason of their poor, weak, and thin condition at the time tendered the defendant for transportation, and at the time of their arrival at Ft. Worth. The cause was tried before a jury on June 20, 1913, and upon peremptory instructions from the court to find for the plaintiffs, the jury returned a verdict in favor of the plaintiffs for the sum of $750.

The appellant's first and second assignments of error charge that the court erred: (a) In peremptorily instructing a verdict in favor of appellee; (b) in not giving peremptory instructions for appellant as requested. Its proposition being that the uncontroverted evidence showed that this is a suit for conversion of a car load of cattle from a point east of the quarantine line to a point west of the line; that the state and federal laws prohibit such shipments without the cattle being dipped, and that appellee failed and refused to comply with the said regulations, and thereby prevented the delivery of the cattle. The railway company was therefore not liable. Appellees' counter proposition is that in the shipment of cattle, wherein it is necessary for them to be dipped before reaching their destination, and they are being transported without an attendant, it is the duty of the railway company to include in its shipping contract all necessary releases and authority for dipping them, and, having failed to do so, and such failure upon the part of appellant being the cause of nondelivery of the cattle at destination, the court did

not err in instructing verdict for appellees. The appellees pleaded an express contract to safely transport the cattle in question from Lindale, a point east of the quarantine line to Stanton, a point west of the line, with no allegation that the contract so pleaded did not cover all the obligations of the railway company in connection with the cattle delivered.

[1, 2] The quarantine regulations provide that cattle originating in the quarantine area that have been dipped under the supervision of an inspector of the commission may be shipped by rail to any point west of the quarantine line, and further provides that no cattle shall be shipped from the quarantined area in Texas into the area west of such quarantine line unless they are free from fever ticks. Primarily, these regulations impose the duty of complying with them upon the shipper, and if the appellee in this case has been relieved of the duty, and the railway company is charged with it, it becomes a matter of pleading and proof, and the burden is upon him, appellee, to plead and prove it, for the duty of dipping the cattle is no part of the contract of shipment. Clegg v. Gulf, C. & S. F. Ry. Co., 104 Tex. 280, 137 S. W. 112. And, appellees having failed to plead and prove that the railway company was charged with the duty, by contract or otherwise, the company cannot be held liable for any damages resulting from a failure to dip the cattle, and likewise not liable for failure to deliver the cattle at destination, because the railway company was prevented by law from further transporting the cattle.

[3] However, the record is silent upon the question of conversion of the cattle, except that they were in the possession of the appellant at Ft. Worth, Tex.; that some died and others were sold. Since the law prohibited further transportation of the cattle, under the facts in this record, Ft. Worth was the point of conversion, if any there was, and the true measure of plaintiff's damages, if the cattle were so converted, is the reasonable market value of the cattle there, and not at Stanton, Tex., as pleaded and proven by plaintiff, and which is assigned as error under the third and fifth assignments. For this reason the cause must be reversed and remanded.

[4] If through the negligence or default of the railway company the cattle had not been delivered at point of destination, the rule would be as enunciated in the case of St. Louis, S. F. & T. Ry. Co. v. Adams, 55 Tex. Civ. App. 245, 118 S. W. 1155, but it was through no fault of appellant that the cattle were not transported to their destination; therefore, if converted, the true measure of plaintiff's damages is their reasonable market value at Ft. Worth at the time of conversion with interest. Gulf, C. & S. F. Ry. Co. v. Cleburne Ice & Cold Storage Co., 79 S. W. 836. If the cattle were sold under the provisions of the statute (Rev. Civ. arts. 728 and

726, 1911), there would be no conversion, and the amount plaintiff should recover is fixed by the statutes cited.

The fourth assignment is disposed of by what is stated above.

Reversed and remanded.