EL PASO GRAIN & MILLING CO. v. LAWRENCE. (No. 992.)

(Court of Civil Appeals of Texas. El Paso. June 5, 1919. Rehearing Denied June 26, 1919.)

1. SALES ☞164—CONTRACTS—REPUDIATION.

A seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity or to require him to select part of a greater quantity, so, where a seller agreed to deliver 1,000 barrels of flour according to sample, but part of the flour delivered was damaged, the buyer may refuse to accept the undamaged portion.

2. SALES ☞153—PERFORMANCE—TENDER OF PERFORMANCE.

Where a seller agreed to deliver 1,000 barrels of flour, but part of the shipment was damaged, the seller cannot hold the buyer liable on the theory that by letter he tendered delivery of other flour, and that the letter was returned to him without proof as to how the letter was delivered or returned.

3. SALES ☞153—DELIVERY—TENDER.

Where the seller agreed to deliver 1,000 barrels of flour, but part of the flour tendered

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was damaged, a letter by the seller, stating that he was willing to deliver additional flour in good condition, or would deduct the amount of that damaged from the contract price, is not such a tender of performance as would entitle the seller to recover for the buyer's refusal to accept the flour.

**4. SALES ⟨⟩379 — ACTION BY SELLER — RESALE.**

Where a seller after refusal of the buyer to accept resold the flour, and his action for damages was based on the propositions that he had made such a tender as to place him in the position of having done all that he was required to do to transfer title to the buyer, or, if not, that he had made such an offer of tender as relieved him of an actual tender, proof of such facts are essential to recovery.

**5. EVIDENCE ⟨⟩318(1) — HEARSAY DECLARATIONS.**

Where plaintiff, who purchased Minnesota flour, contracted to resell the same, evidence that the waybill and expense bill covering the shipment contained the notation that 52 bags were caked at Duluth was inadmissible on behalf of defendant, who, the seller claimed, wrongfully refused to accept delivery, being simply hearsay declarations of third parties not under oath.

**6. SALES ⟨⟩388 — CONTRACTS — INSTRUCTION.**

In an action by a seller for breach of contract, an instruction that an exhibit on the billhead of the seller amounted to an offer to sell the flour, and that, if it was communicated to defendant and accepted and the acceptance was communicated to the seller, then the seller became bound to deliver the flour and defendant to accept it, *held* erroneous; defendant's agent having denied receiving any offer to sell or communicated any acceptance, and the exhibit tending to show on its face that the sale was made to a third person other than defendant.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by C. H. Lawrence against the El Paso Grain & Milling Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Rufus B. Daniel, of El Paso, for appellant.
M. W. Stanton and M. V. Ward, both of El Paso, for appellee.

### Statement of the Case.

HARPER, C. J. Appellee brought this suit for damages for breach of contract by appellant, and, in effect, alleged that, having theretofore purchased 1,000 barrels of Pillsbury low-grade flour, he, on May 12, 1917, through his agent McMahon & Co., merchandise brokers, entered into a contract, whereby he agreed to sell to defendant company and it agreed to buy said flour, 1,000 barrels of grade shown by sample to be delivered free on board (f. o. b.) at El Paso, Tex., within 90 days from said date, subject to delay in

obtaining equipment, and for which the defendant agreed to pay $11 per barrel; that plaintiff through his agent, his son, did in writing confirm said sale, and agreed to sell to the defendant through John H. McMahon & Co., who were duly authorized to make such purchase for and on behalf of defendant company, and said confirmation, which was executed in duplicate and accepted, was duly received by said McMahon & Co., to whom same was addressed and was immediately thereafter delivered to said defendant company, and same was by defendant company duly accepted, acting by and through its agent, Claiborne Adams, its duly authorized agent and manager; that said flour having arrived in El Paso in all things pursuant to the said contract, he tendered full performance, and the said flour became the property of and was owned by the said defendant company, and in any event said defendant became liable to pay plaintiff the purchase price thereof; that the defendant in violation of said contract refused to accept it; that thereafter he notified said Adams that it was in the railway yards at El Paso ready for delivery, and again tendered it, and in the same letter notified defendant that, unless accepted, it would be sold for account of defendant; and, defendant having made objections to receiving the flour for the reason that 52 sacks were damaged by becoming wet, plaintiff by letter offered to deliver to defendant the additional 52 sacks of flour in good condition, or would deduct that amount from the contract price, and defendant again refused to accept said flour. The petition contains a second count, but by express reference makes all of the allegations in the one above quoted a part thereof, and so far as we can determine contains no allegations materially different from the quotations above.

Defendant answered by general and special exceptions, general denial, and specially pleaded that, if he had a contract for 1,000 barrels of flour, it was in writing, subject to prompt shipment, as follows:

"John H. McMahon & Co., Merchandise Brokers & Manufacturers' Agents.
      "El Paso, Texas, May 12, 1917.
"Buyer, Globe Mills. City, El Paso. State, Texas. Ship via —— to El Paso, Texas.
5 cars Minneapolis flour.....$11.00 per barrel. f. o. b. El Paso
"Prompt shipment (subject car shortage).
"Prefer in jutes, if not in 24's. Same as sample.                   Globe Mills,
                                  "C. S. Adams."

—but denied that such writing constituted a contract. That if this is the flour plaintiff was intending to deliver in pursuance of such agreement, then it was not bound to accept same, because plaintiff did not per-

form the matters and things agreed to be done by said writing.

(a) Plaintiff did not make prompt shipment of such flour; (b) did not ship nor cause to be shipped the said flour from Minneapolis as he agreed to do; (c) nor as to sample, but that 52 bags were unfit for sale, on account of being wet; (d) did not ship in five cars; (e) did not offer or afford an opportunity to examine. Denied that McMahon & Co. ever acted as agent for it, in the execution of said writing; that plaintiff rescinded sale, if any, by subsequently selling, May 12, 1917, to John H. McMahon & Co. Charged that the sale to Schuster & Sons was not fairly made, in that plaintiff did not use due diligence in obtaining best market price, and that such failure was so negligently and carelessly made as to amount to a fraudulent sale, and charged that Schuster & Sons was acting as agent of plaintiff in making the sale, and that plaintiff lost nothing. Tried to a jury, submitted upon special issues, and upon the verdict judgment was entered for plaintiff, from which this appeal.

## Opinion.

The first assignment is that the court erred in refusing to instruct a vedict for defendant.

[1-3] The first proposition is that there was no meeting of the minds of the parties upon the contract sued on. One witness for plaintiff testified that the offer of sale was made as pleaded, and that the defendant through its agent accepted it, and jury have found in favor of plaintiff upon the issue.

The second is: Before plaintiff could recover he must show a tender of the amount and grade of flour contracted for, and that it was in merchantable condition. There is pleading and evidence from defendant that some of the flour that was shipped was damaged by water. Appellee urges as a counter proposition "that he had pleaded and adduced evidence to the effect that he offered to replace the damaged flour, and the jury by their answer to special issue No. 3 have resolved this issue in his favor; that this finally disposes of the question." The question presented is, Was it a compliance with the provisions of this contract to tender 1,000 barrels of flour, 52 sacks of which were damaged and then, upon rejection by the purchaser because of the damaged flour, was it a sufficient tender to write to the purchaser, "I am willing to agree to deliver to you the additional fifty-two sacks of flour in good condition or I will deduct that amount from the contract price according to the rate agreed to be paid by you"? Brawley v. United States, 96 U. S. 168, 24 L. Ed. 622.

In Norrington v. Wright, 115 U. S. 188, 6 Sup. Ct. 12, 29 L. Ed. 366, the court said:

"The seller is bound to deliver the quantity stipulated, and has no right either to compel the buyer to accept a less quantity, or to require him to select part out of a greater quantity."

And where as in this case the contract provided that the flour should conform to sample and for a specific amount, 1,000 barrels, and for delivery in a specific manner and at a definite place, a failure to comply with any one of the conditions precedent is sufficient ground for repudiating the whole contract. Note, 35 L. R. A. p. 287; Keeler v. Paulus Mfg. Co., 43 Tex. Civ. App. 555, 96 S. W. 1097; Robert McLane Co. v. Swernemann et al., 189 S. W. 282.

There is practically no dispute in this case that the 52 sacks of flour were in a damaged condition, in fact plaintiff has virtually admitted it by his letter offering to replace it by "delivering fifty-two sacks of flour in good condition," and this does not meet the provisions of the contract. His contract is to place in cars the 1,000 barrels of flour as per sample shown, f. o. b. El Paso, Tex.

The findings of the jury invoked by appellee as settling the question are: The court propounded this question or questions:

"Do you find from the evidence the defendant, acting by and through Adams, made the objection to the delivery of the flour upon the ground and for the reason that there was a delay in shipment, and that 52 sacks or bags of flour had been caked and were damaged, and that the plaintiff thereupon again tendered delivery of the flour, and offered to replace the 52 bags with the same kind and grade of flour, or to deduct the value thereof according to the contract price for the shipment, and that defendant, acting by and through C. Adams, refused to accept the offer made by the plaintiff? Answer: Yes."

In the first place there is no evidence in this record that the letter introduced in evidence, which is relied upon as an offer to tender 52 sacks of flour in the place of that which was damaged, was ever delivered to the Globe Mills or its agent; nor that its agent had any knowledge of its existence. The only evidence in the record in regard to the letter is that of Lawrence, Jr., who testified:

"I sent the following letter to the Globe Mills, and it was returned to me."

The evidence is silent as to whether it was sent by mail or by private messenger, and likewise silent as to the manner of its return, and without such proof the plaintiff was not in a position to be relieved of an actual tender by a refusal of an offer to tender, under the well-settled rule to that effect. But the view we take of this case is that the wording of the letter is not a sufficient offer of tender to relieve plaintiff from an actual tender under this contract, even though the letter had been delivered, or its contents had been in fact communicated to appellant's

agent (it reads, "I am willing to agree to deliver to you the additional fifty-two sacks of flour in good condition or I will deduct that amount from the contract price according to the rate agreed to be paid by you"), for the reason that it does not offer the same kind and grade, nor does it fix a date of delivery within the time limit of the contract. Besides there is no proof that appellant in any way declared that he would not accept if tendered, and mere silence under the facts of this case does not constitute a waiver of an actual tender in strict accordance with the terms of the contract.

[4] Appellee further suggests that the resale was made without loss on account of damaged flour; that this is evidence that the flour was not in fact damaged. Appellee testified that there was no reduction made by reason of damaged flour, but for all this record discloses the price received upon resale may have been based upon knowledge of the damaged flour. However, this is not the test in this case. The fact that the evidence does not establish that plaintiff has offered 1,000 sacks of flour f. o. b. in El Paso agreeable to sample is the reason the cause must be reversed for a new trial.

As to whether the flour was in fact damaged was not submitted to the jury, so if there was any affirmative evidence that it was not damaged it would be here presumed that the finding upon the issue was in favor of appellee, but we think that all the evidence of any probative force is to the effect that it was so damaged.

Appellee has bottomed this case upon the propositions that he has made such a tender of the flour as to place him in the position of having done all that he was required to do under the provisions of the contract to transfer the title to it to appellant, or, if not, then that he has made such an offer to tender as relieves him of an actual tender, and the appellant had refused to pay cash as per contract. And he has exercised his lawful right to treat the flour as the property of appellant, and as the latter's agent resold the flour for what he insists was the highest price he could obtain, and sued for the difference between that price and the contract price. Texas Seed Co. v. Chicago Seed Co., 187 S. W. 747. And as indicated above, there is no evidence of any probative force to support a judgment in his favor upon either theory of the case.

[5] The appellant complains that it was error for the trial court to exclude the evidence of witnesses that the waybill and expense bills covering the shipment contained the notation, "Checked fifty-two bags of 141 lbs. caked at Duluth." As between Lawrence and the Globe Mills it is simply declarations of third parties, not under oath; therefore hearsay and not admissible. Patterson & Co. v. Railway Co., 126 S. W. 336.

[6] As the basis for his cause of action plaintiff introduced the following instrument:

### Exhibit 11.

"Bell Phone 30.
"Auto Phone 1030.
"All Packing House Goods Bought and Sold at Packing House Weights.
          "El Paso, Texas, May 12, 1917.
"John H. McMahon & Co., Bought of C. H. Lawrence, Wholesale Dealer in Groceries, Produce, Hay, Feed & Grain.

"All Goods Received in Carload Lots.

"Terms: Net cash. Interest charged if not paid within 10 days.
"Sole Agent U. S. for Recorte Tobacco, Trade-Mark Registered.
        "715, 717 and 719 So El Paso St.
"1000 barrels low grade flour from Pillsbury Flour Mills as per sample shown. Shipment within ninety days subject to delay in securing shipping equipment. F. o. b. El Paso 24's at $11.00 per bbl.    C. H. L. Jr."

Witness McMahon testified that the writing pleaded by defendant, noted above in the pleading, was not accepted by plaintiff, but that the next above copied paper was prepared in its place, known as "Exhibit 11," and that it was "read over the phone" to Adams, defendant's agent, and accepted by him. The court gave the following charge:

"As to Exhibit 11 on the billhead of the plaintiff, Lawrence, you are instructed, under all the facts and circumstances in evidence, same simply amounts to an offer by Lawrence to sell the flour on the terms in said exhibit contained, but if said offer was communicted to the Globe Mills by communicating the same to C. Adams, its manager, and said Adams accepted same, and said acceptance was communicated to C. H. Lawrence, or his agent, then and thereby Lawrence became legally bound to deliver said flour to the Globe Mills, with the terms contained in said order, and the Globe Mills became legally bound, on tender of delivery of said flour in accordance with the terms of said contract, to pay therefor the sum of $11 per barrel."

And appellant assigns this charge as error, upon the ground that on its face it is a memorandum of sale by plaintiff to John H. McMahon & Co., and we think the criticism is well taken, and there are other reasons why this charge was affirmatively wrong. In view of another trial we note what is considered the most forceful one. The defense in this case as pleaded was that no other contract was entered into than the one pleaded by defendant, and this was one of the contested issues in this case, defendant's agent having denied having received any such offer of sale, or that he accepted it, so it was wrong for the court to charge that this writing had such legal effect, for, if it was read to Adams as testified to, it could convey no other meaning than that McMahon & Co. had purchased the flour, for it does not, upon its face, possess any of the requi-

sites of a proposition of future sale of flour to any person.

In this connection it was error to refuse to submit the affirmative defense of defendant that he only accepted one offer to sell, and that was the one he pleaded being in writing.

There are other assignments, but, if error, they are not likely to occur upon another trial, so are not passed upon.

Reversed and remanded.

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes