## LANCASTER et al. v. ROGERS & ADAMS et al. (No. 1256.)

(Court of Civil Appeals of Texas. El Paso. Nov. 17, 1921. Rehearing Denied Dec. 15, 1921.)

1. Carriers ⊕229(4)—Damages against initial carrier estimated, not from market value at connecting point, but from value at intended destination.

Damages to mules shipped to market resulting from injury and delay by the initial carrier should not be estimated from their market value at the point for transfer to a connecting carrier, where because of their damaged condition the shippers diverted them to parties at another destination, but from their market value at the destination to which they were originally billed, and when they would have reached that place by ordinary diligence.

2. Evidence ⊕474(15), 543(4)—Owner could state conditions of mules shipped; witness held unqualified to state market value of carload of mules at point of destination.

In an action for damages from the negligent handling of a carload of mules, testimony of one of the owners, who accompanied the shipment and had been in the business for 25 years, as to size, weight, and general condition of animals before and after alleged injuries was admissible, but his testimony as to his knowledge of market values at times prior to that when shipment would have arrived held insufficient to qualify him to testify as to market values.

3. Trial ⊕54(1)—Notation on bill of lading held admissible only to contradict testimony that no such notation was made.

In an action for damages for the negligent handling of and failure to deliver promptly to a connecting carrier a carload of mules contracted to be shipped over defendants' railroad, a notation on the bill of lading to the second carrier, "Stock all in bad shape, none killed," if admissible, should have been limited to its effect as tending to contradict testimony that no such notation had been made by defendants.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Rogers & Adams and others against J. L. Lancaster and another, as receivers of the Texas & Pacific Railway, and the Panhandle & Santa Fé Railway Company. Judgment for the Panhandle & Santa Fé Railway Company but against the receivers, and the latter appeal. Reversed and remanded as to the receivers, but affirmed as to the Panhandle & Santa Fé Railway Company.

S. N. Russell, of El Paso, for appellants.

Volney M. Brown, E. M. Whitaker, and Turney, Burges, Culwell, Holliday & Pollard, all of El Paso, for appellees.

WALTHALL, J. This is an action brought by Rogers & Adams against J. L. Lancaster and C. L. Wallace as receivers of the Texas & Pacific Railway, together with the Panhandle & Santa Fé Railway Company, to recover damages by reason of the alleged negligent handling of a carload of 34 head of mules originally contracted to be shipped over the Texas & Pacific Railway from El Paso, Tex., to Chillicothe, Tex., via Sweetwater, but diverted by the shippers at Sweetwater to Adrian, Tex. The negligent acts charged against the receivers and submitted to the jury are rough handling and delay in transit, and failure to promptly deliver the animals to the Panhandle & Santa Fé at Sweetwater

It was alleged that the mules were shipped for sale at Chillicothe, but, as a result of the damages alleged to have been caused as a result of rough handling and delay prior to their arrival and unloading at Sweetwater, it became necessary to reload them and ship them to Adrian for pasturage, to be gotten in proper condition for the market. As against the Panhandle & Santa Fé it was allaged that it negligently failed to promptly receive the mules for shipment.

The receivers pleaded general denial, and specially certain stipulations in the shipping contract in which it was agreed that such live stock was not to be transported at any particular speed, within any specified time, nor delivered at destination at any particular hour or in time for any particular market.

The receivers further answered that, while Chillicothe was the final destination of the shipment, they did not agree nor contract to transport said animals to Chillicothe, but undertook to transport them only to Sweetwater, a point on their own line of railroad, and that their contract is not a through contract of shipment; alleged that they transported the animals to Sweetwater with ordinary care, diligence, and dispatch, where same would have been promptly delivered to the next succeeding carrier for shipment to Chillicothe except for the interference of appellees, who voluntarily and arbitrarily reconsigned said shipment to Adrian from Sweetwater upon the arrival of the animals at Sweetwater, and under a new and different contract with the Panhandle & Santa Fé Railway Company, to which contract they were not a party, and denied liability under said contract.

The case was tried with the aid of a jury, and submitted on special issues. On issues submitted the jury found that the mules were damaged $29 per head on account of rough handling, and further damaged $1 per head on account of delay by the receivers. The jury found in favor of the Panhandle & Santa Fé Railway Company. Judgment was rendered in favor of appellees against the receivers in the sum of $1,020, and in favor of the Panhandle & Santa Fé Railway Company, and the receivers alone appeal.

Germane to one or more of their 19 assignments of error, appellants rest their appeal upon 10 propositions.

The first, third, fourth, fifth, and sixth propositions may be considered together. The shipment in question orignated at El Paso on the Texas & Pacific Railroad, and the receivers agreed to transport same from El Paso to Sweetwater, consigned to appellees at Chillicothe. When the animals reached Sweetwater appellees instructed the railroad employees not to let the mules go on to Chillicothe, but to hold them in the pens at Sweetwater pending further instruction. At the end of about two days appellees had the destination of the shipment changed from Chillicothe to Adrian, and the animals then went forward from Sweetwater to Adrian over the Panhandle & Santa Fé Railway, under a new bill of lading.

In submitting to the jury the issue of damages sustained by reason of rough handling and delay on the Texas & Pacific Railroad, the court submitted the issue on the market value of the mules at Chillicothe, and the damages found by the jury were estimated from the evidence as to the market values of the mules at Chillicothe. It is the contention of appellants that the damages sustained while on the Texas & Pacific Railroad, if any, should have been estimated from the market values of the mules at Sweetwater, the point of diversion of the shipment, and not at Chillicothe, the original piont of destination. The point raised in the propositions does not go to the form of the charge in which the values were submitted, but to the place from which the values are taken, in fixing the damages.

The jury found that the mules were damaged in their market value by reason of rough handling and delay, and that all of the damages that were sustained during the entire transportation occurred while in transit on the Texas & Pacific Railroad. The evidence further shows that the mules were being shipped to market at Chillicothe, and

that by reason of the damaged condition of the mules when they reached Sweetwater appellees diverted the shipment to their pastures at Adrian.

[1] We have concluded that the court was not in error in establishing the amount of the damages by the market values of the mules of Chillicothe. That was the point of destination of the shipment. The mules were consigned to appellees at Chillicothe. There is nothing to indicate that the shippers and the carrier, in originally billing the shipment, had any point in contemplation other than Chillicothe, as the point of destination. It is the rule, as we understand it, that the point of destination is the place where the damages are to be estimated, and by the market value of the mules when they would have reached that place by ordinary diligence. Certainly the mere fact that the shipment was diverted at Sweetwater, or that Sweetwater was the point on appellant's line of railroad to which appellants were to transport and deliver the shipment on the consignment of the shipment to Chillicothe would not change the rule as to the point where the values should be taken in estimating the damages. Tex. & Pac. Ry. Co. v. Tracy, 38 Tex. Civ. App. 327, 85 S. W. 833; St. L. & S. F. & T. Ry. v. Adams, 55 Tex. Civ. App. 245, 118 S. W. 1155; Texas & Pacific Ry. Co. v. Shipman, 98 S. W. 449; M. K. & T. Ry. Co. v. Carpenter, 52 Tex. Civ. App. 585, 114 S. W. 900; Texas & Pacific Ry. Co. v. Stewart, 43 Tex. Civ. App. 399, 96 S. W. 106; G., H. & S. A. Ry. Co. v. Cobb & McCrory, 126 S. W. 63; H. & T. C. R. Co. v. Roberts, 60 Tex. Civ. App. 145, 126 S. W. 890; Scott v. Texas Cent. R. Co., 60 Tex. Civ. App. 281, 127 S. W. 849. We are of the opinion that the cases to which we are referred by appellant do not state a different rule from that expressed above. We need not review them.

[2] The second proposition questions the qualification of the witness Rogers to testify as to the market value of the mules at Chillicothe. The shipment was made about the 19th day of March, 1920, and should have arrived at Chillicothe a few days thereafter. Rogers was one of the owners of the mules, and accompanied the shipment. He was in the business of buying, shipping, and selling mules, and had been in that business for 25 years. He testified to the sizes and weights of the mules and their general condition at the time and during the shipment. He testified that he knew the market value of the mules at Chillicothe at the time and in the condition they would have arrived with usual and ordinary treatment, stating their values. Witness testified to the way the shipment was handled en route from El Paso to Sweetwater and the delays on the cars after loading, and said:

"I know from my experience in handling and shipping and selling and buying such mules as these how much that damages them per head. It damages them $40 to $50 apiece."

He did not see any mules of same class as his mules bought and sold in Chillicothe during same month the mules in question were shipped. Had sold 30 cars of mules at Chillicothe, but the closest time at such sales was the year before. Witness said:

"I saw other mules sold there about that time beside what I shipped there [meaning, as we take it, at the times of his shipments]. I was there in January, and saw some mules sold in Chillicothe. Some were better and some not so good as these. * * * I shipped a car there in February to a man who did sell them, and I received the money for them. As to what investigation I made in that territory, why I went there in January to see the condition of the market. I was figuring on shipping mules. I went there and stayed four days, saw some mules sold in Chillicothe, and made inquiries of people engaged in that business. I base my knowledge of market values on all these things. * * * Yes, sir; there is a regular market there for mules all the time, a good market."

While the proposition of appellant goes more to the weight of the evidence than to its admissibility, we will consider it as to its sufficiency as showing knowledge of the market value of the mules at Chillicothe at the time the shipment should have reached there, the latter part of March, 1920.

Our Supreme Court, in Southern Pacific Ry. Co. v. Maddox & Co., 75 Tex. 300, 12 S. W. 815, said that before a witness should be permitted to testify as to values it should be made to appear that the witness is in possession of such information as to values as will enable him to form an intelligent opinion. The values the witness should be permitted to speak to should be the market values of the animals, if there is a market value, at the time and place, when and where the values are to be fixed, in order to ascertain the damages sustained. The evidence shows there was a market for these mules at Chillicothe, but it is not at all clear if there is any evidence that there was a market value at Chillicothe for the mules in their damaged condition.

The evidence of the witness as to the size, weight, and general condition of the animals before and after their alleged injuries was admissible. That the witness had shipped mules to Chillicothe the year before this shipment was made; had seen some mules sold in that market in January; information the witness had obtained from persons who claimed to be familiar with the market that he had shipped a carload of mules to another to sell at Chillicothe in February, 1920, and knew only what money he had received for his mules—none or all of these facts

would qualify the witness to state that the mules were worth $150 each, or that their values were reduced $40 or $50 each, in the mule market at Chillicothe, by reason of their injuries; nor would such information as above qualify the witness to state the market values of the mules at Chillicothe whether uninjured or in their injured condition, in the latter part of March, 1920. The value of the mules before and after the injuries must have reference to their market values at Chillicothe, the place within the contemplation of the shipper and carrier at the time of entering into the shipment contract. Texas & Pacific Ry. Co. v. Arnett, 40 Tex. Civ. App. 76, 88 S. W. 448; Texas & New Orleans Ry. v. White, 25 Tex. Civ. App. 278, 62 S. W. 133.

The test of the values in fixing the damages is what the mules would have brought in the Chillicothe market at the time they would have reached their destination, before and after their injuries. The record does not disclose, in our opinion, by any competent evidence, that the witness Rogers knew the market values of the mules in their uninjured and injured conditions in the Chillicothe market in the month of March, 1920, or within such time as to enable him to state the market values of the mules at that time. Rogers was the only witness offered on the market values of the animals.

[3] While we think the same conditions may not arise on another trial under which the notation on the margin of the Panhandle & Santa Fé Railway Company bill of lading, "Stock all in bad shape, none killed," was admitted in evidence against the receivers, as complained of in propositions 7 and 8, we think it well to say that if the notation was admissible for any purpose as against the receivers, it should have been limited, we think, as tending to contradict some statements of the witness Arnold, to the effect that no notation such as above had been made by the receivers.

Judge HARPER is of the opinion that it was also error to admit the notation on the waybill as to the condition of the mules when received by the Santa Fé Railway Company, because there was no proof of its authenticity. Patterson v. Gulf, etc., Ry. Co., 126 S. W. 336; El Paso Grain & Milling Co. v. Lawrence, 214 S. W. 515.

We need not discuss propositions 9 and 10.

For the reason that the record does not disclose the market values of the mules at Chillicothe by any competent evidence, the case is reversed and remanded.

### On Motions for Rehearing on the Part of Rogers & Adams, and the Panhandle & Santa Fé Railway Company.

The motion for rehearing of appellees, Rogers & Adams is overruled, and the motion for rehearing of the Panhandle & Santa Fé Railway Company is sustained, and the judgment in its favor is affirmed.