St. Louis Southwestern Railway Company of Texas v. A. A. Jackson & Company.

Decided April 24, 1909.

1.—Railways—Connecting Carriers—Agency—Damage to Through Shipment—Presumption.

Where a carload of fruit was shipped from a point in another State and consigned to plaintiff at Dallas, Texas, and the defendant carrier transported it to Dallas and there delivered the car to a terminal railway which in turn delivered it to another railway company to be shifted by the latter to the house track of plaintiff on its line, the latter, in placing the car on the unloading track, was not a connecting carrier within the meaning of the statute, but acted as agent of the defendant carrier, and, therefore no presumption arose that damage to the fruit occurred while its car was in its possession.

2.—Cases Followed.

Texas & Pacific Ry. Co. v. Scoggin, 40 Texas Civ. App., 526; Chicago, R. I. & G. Ry. Co. v. Young, 107 S. W. 127, followed.

3.—Carriers of Goods—Perishable Shipment—Negligence—Change of Weather.

It is the duty of a carrier transporting perishable shipments to use reasonable

diligence to protect such shipment from changes in the weather, provided the shipper has exercised the precaution to use a car by which the carrier would be enabled to regulate the temperature of the car, notwithstanding the shipper has failed to give the carrier instructions regarding same, and failure on the part of the carrier to do so will render it liable for the resulting damages.

**4.—Same—Case Stated.**

Where a carload of fruit was shipped from a point in New York to a point in Texas in the month of March, and there was evidence to show that the car was provided with means for refrigerating and airing the contents, but was not iced at shipping point, the temperature being 10 degrees above zero there at the time; that when the defendant carrier received the car at the point the shipment entered the State of Texas, the temperature was 75 degrees; that when it received the cars its employees having charge knew that it was a refrigerating car but made no inspection to see whether it needed icing or ventilation though facilities for icing at such point existed; and that the failure to ice and ventilate caused damage to the shipment, a finding of actionable negligence on the part of the carrier was authorized, although the shipper gave no instruction to ice. The fact that it was the custom among shippers of fruit from New York to Texas during the seasons when the weather is so warm that it becomes necessary to ice before shipment to cause instruction to be placed in the bill of lading in reference to icing, could not affect the question, such custom not applying to shipments where the car is not iced before starting. The billing put the carrier upon notice that the car was loaded with perishable property, and it was its duty to exercise ordinary care to protect it from injury.

**5.—Same—Damage to Goods—Presumption.**

When the goods are shipped in good condition and are delivered by the last connecting carrier in a damaged condition, the presumption is that the damage resulted from its negligence.

Appeal from the County Court of Dallas County.   Tried below before Hon. W. M. Holland.

*Crane, Gilbert & Crane,* for appellant.—The evidence conclusively showed that this car of apples was delivered by appellant to the Texas & Pacific Railway Company, at 7:15 a. m., and that the said Texas & Pacific Railway Company delivered same to appellee at 4 p. m. on the same day, and nowhere did appellee overcome the legal presumption that the damage to said apples did not occur while the same was in the possession of the said Texas & Pacific Railway Company, the delivering carrier. The evidence showed conclusively, that the Texas & Pacific Railway Company, the delivering carrier, delivered the shipment of apples to appellee in a damaged condition. The uncontradicted testimony shows that appellant delivered said carload of apples promptly to the Texas & Pacific Railway Company at Dallas, in like condition as when it was received by appellant. Missouri Pacific Ry. v. Wichita Grocery Co., 55 Kan. 525; 40 Pac. Rep. 899; Texas & Pacific Ry. v. Adams, 78 Texas, 375; McCarn v. Railway, 84 Texas, 353; St. Louis S. W. Ry. Co. v. Cohen, 55 S. W., 1124; Railway v. Foltz, 3 Texas Civ. App., 644; 3 Hutchinson on Carriers, 3 ed., 761.

The evidence being conclusive that the damage to said apples was directly and proximately due to the failure of appellee and its agents, Austin and Dye, to give directions to the carriers handling the shipment to re-ice the same in transit, and to open the ventilators, the court should have found a verdict in favor of appellants. It appearing affirmatively, from the evidence, that appellant was in no wise negligent in

handling said shipment; the court should have found against appellee, and in favor of appellant. The evidence showed conclusively that no part of the damage occurred on appellant's line or while said shipment was in its possession. The Delaware, 14 Wall., 579; Lawrence v. Minturn, 17 How., 114; Gillett v. M., K. & T. Ry., 68 S. W., 61; Texas Central Ry. v. Dorsey, 70 S. W., 575; Chicago, etc., Ry. v. Reyman, 76 N. E., 970; 2 Hutchinson on Carriers, 3d ed., sec. 611.

*Leake & Henry,* for appellee.—A contract of carriage undertaking to transport a car of apples from Medina, New York, to Dallas, Texas, is fully complied with and satisfied so far as the liability of the common carrier is concerned when the goods reach the city of destination and the carrier hauling said car into said city of destination has notified the consignee of the arrival of said goods.

It is the duty of the common carrier when goods arrive at destination to notify the consignee, but the carrier is not required to make personal delivery of said goods by taking the goods to consignee wherever he may be found at the place of destination, and if the carrier attempts to shift the car by other carriers to the place of business of the consignee, then said carrier makes the delivering carrier its agent and not a connecting carrier under the said contract of affreightment. Chicago, Rock Island & Gulf R. Co. v. Young, 107 S. W. 127; Texas & Pacific R. Co. v. Scoggin, 40 Texas Civ. App., 526; Rev. Stats., art. 324.

BOOKHOUT, Associate Justice.—This is a suit filed by appellee in the County Court of Dallas County against the Texas & Pacific Railway Company, the St. Louis Southwestern Railway Company, and appellant, the St. Louis Southwestern Railway Company of Texas, for damages. The substantial allegations in appellee's petition are as follows: On March 5, 1904, the firm of Austin & Dye, of Medina, New York, shipped to appellee at Dallas, Texas, 174 barrels of apples in car A R L No. 6549, which car was a refrigerator car properly equipped for the preservation of the apples contained in said shipment. That said car of apples was transported by the defendant St. Louis Southwestern Railway Company from Memphis, Tennessee, to Texarkana, Texas, and there delivered to its co-defendant, St. Louis Southwestern Railway Company of Texas, the appellant herein, which transported same to Dallas, Texas, at which last named point it delivered said car to its co-defendant, the Texas & Pacific Railway Company, who delivered said car to appellee at Dallas, Texas, on March 17, 1904. That said apples were in sound condition when delivered to the railway company at Medina, New York, but that when delivered to appellee at Dallas, Texas, a large amount of same were rotten and of no value whatever. That the rotten condition of said apples and the damage thus caused to same was due to the negligence of said defendants in failing and refusing to ice said car while in their possession, when the temperature of the atmosphere was high, and in failing and refusing to properly adjust the ventilators; that said car was fully equipped with ventilators and with ice bunkers designed to hold ice for the proper preservation of perishable goods contained therein. That by reason of said negligence the interior of said car became heated on the southern part of

its journey, and that by reason of said ventilators being closed said apples received no fresh air and were caused to be heated and spoiled. Appellee claims damages in the sum of $282.52.

The appellant, St. Louis Southwestern Railway Company of Texas, answered by general demurrer, general denial, and specially answered that this suit grew out of a shipment of a carload of apples from Medina, New York, to Dallas, Texas, and was an interstate shipment. That it originated at Medina on March 5, 1904, under a through bill of lading issued by the New York Central & Hudson River Railroad from Medina, New York, to Dallas, Texas, pursuant to directions of appellee. That, among other things, said bill of lading provided that the line of railroad only shall be responsible for any damages to said shipment having the custody and care of the goods when the damage occurred thereto. That the shipment consisted wholly of a carload of apples and was transported in the same car in which they were loaded at Medina, New York, to Dallas, its destination. That while in appellant's custody said car of apples was handled with care and dispatched with promptness and expedition. That same was delivered to appellant after eight o'clock p. m. on March 16, 1904, at Texarkana, Texas, and was forwarded from that station to its destination, Dallas, Texas, at one o'clock a. m. March 17, 1904, and that it arrived at Dallas, at 7:40 p. m. on March 17, 1904, and was promptly delivered to appellee in like condition as when it was received by appellant. That plaintiff was both the consignor and the consignee in this shipment, but that he gave no directions for icing the car either at the point of origin or while in transit, nor did he give directions, as it was his duty to have done, concerning the opening of the ventilators in said car if he had wanted any such course pursued by any carrier having the custody of such shipment. Appellant further averred that if the carriers handling said shipment between the point of origin and destination were to have iced or re-iced said car in transit, it was the duty of appellee, and the custom of the business of shippers of apples or other perishable fruits, to have noted on the way bill accompanying such shipment his directions for icing and re-icing of said car in transit, of all of which plaintiff was advised at the time of making this shipment, and he could and would have refused to pay the charges for the icing or re-icing of said car if it had been done without his direction as aforesaid. That there was no request to ice or re-ice said car and no notice of appellee's desire that it should be done, if he did so desire it done, on the way bill or bill of lading under which this appellant received and transported said car.

When said cause was called for trial, appellee dismissed as to the Texas & Pacific Railway Company and the St. Louis Southwestern Railway Company. A trial was had before the court without a jury and resulted in a judgment against appellant in favor of appellee in the sum of $202.50 with interest from the nineteenth day of March, 1905, at the rate of six percent. Appellant perfected an appeal to this court.

The first assignment complains that the court erred in rendering judgment against it. The contention is made that the evidence con-

clusively showed that this car of apples was delivered by appellant to the Texas & Pacific Railway Company, at 7:15 a. m., and that the said Texas & Pacific Railway Company delivered to appellee at 4 p. m., on the same day, and nowhere did appellee overcome the legal presumption that the damage to said apples did not occur while the same was in the possession of the said Texas & Pacific Railway Company, the delivering carrier. The car of apples in controversy was consigned at Medina, New York, to appellee at Dallas, Texas. The appellant·transported said car from Texarkana to Dallas, and delivered said car to the terminal railway company at Dallas, which terminal railway company, in turn, delivered said car to the Texas & Pacific Railway to be shifted by the last railway company to the house track of the appellee on the line of the Texas & Pacific Railway Company. The Texas & Pacific Railway Company in placing the car upon the unloading track was not a connecting carrier within the meaning of the statute, but acted as the agent of the appellant. Chicago, R. I. & G. R. Co. v. Young, 107 S. W., 127; Texas & P. Ry. Co. v. Scoggin, 40 Texas Civ. App., 526.

Again, it is contended that as the evidence conclusively shows that the damage to said apples was directly and proximately due to the failure of appellee and its agents to give directions to the carriers handling the shipment, to re-ice the same in transit, and to open the ventilators, the court should have rendered judgment in favor of appellant. The shipment was made on March 5, 1904, from Medina, New York, to Dallas, Texas. It was made in a refrigerator car which did not contain any ice. At the time it was cold at Medina, the temperature being 10 degrees above zero. Appellee's agents superintending the shipment did not give any instructions in reference to icing the car and none were contained in the freight bill. The failure to open the ventilators of the car and to ice the car after the climate became too warm to safely transport them, was the cause of the damage to the apples. The question arises, is it the duty of a carrier transporting perishable shipments to use reasonable diligence to protect said shipments from changes in the weather, provided the shipper has exercised the precaution to use a car by which the carrier would be enabled to regulate the temperature of the car, notwithstanding the shipper has failed to give the carrier instructions regarding same. In discussing this question, Mr. Hutchinson in his third edition on Carriers, sec. 646, uses the following language: "In short, the conclusion to be drawn from all the cases upon this subject is, that whenever the situation or condition of the goods, from accident or from any cause, becomes such as to require especial care or attention, the carrier must put himself in the place of their owner, and do for them all that might reasonably be expected of a prudent and careful person; and, if necessary, it would be his duty to incur any expense in their preservation which their value would justify, and which their condition might make necessary. His contract and his obligation is not only to carry the goods, but to carry them safely; and when they become exposed to the danger of deterioration or destruction from their own inherent infirmity or from any cause for which the carrier is not accountable,

the law makes it his duty to employ at least a reasonable degree of skill and diligence to preserve them, and if he fail to do so, it will be accounted negligence, and he will be liable for the loss, though the actual proximate cause of it may be one for which, but for his negligence, he would be in nowise responsible."

The case of Beard v. Illinois Central R. R., decided by the Supreme Court of Iowa, 7 L. R. A., 280, was a shipment of butter delivered at West Union, Iowa, to a carrier to be shipped to New Orleans, Louisiana. No directions were given to the carrier by the shipper as to icing or re-icing the car for the protection of the butter. It was in a damaged condition when delivered to the consignee at New Orleans. In discussing the liability of the carrier under such circumstances that court used language as follows: "We will proceed to inquire as to the duty of defendant upon receiving the butter in a car from the Cairo Short Line for transportation to New Orleans, without directions or instructions as to the character of the car in which it should be carried. A carrier's duty is not limited to the transportation of goods delivered for carriage. He must exercise such diligence as is required by law to protect the goods from destruction and injury resulting from conditions which, in the exercise of due care, may be averted or counteracted. He must guard the goods from destruction or injury by the elements; from the effects of delays; indeed, from every source of injury which he may avert, and which, in the exercise of care and ordinary intelligence, may be known or anticipated. Unknown causes or those which are inherent in the nature of goods and can not be, in the case of diligence, averted, will not render the carrier liable. The nature of the goods must be considered in determining the carrier's duty. Some metals may be transported in open cars. Many articles of commerce, when transported, must be protected from rain, sunshine and heat, and must have cars fitted for their safe transportation. Live animals must have food and water when the distance of transportation demands it. Fruit, and some other perishable articles, must be carried with expedition and protection from frost. So the carrier must attend to the character of the goods he transports. He is informed thereof by inspection of the freight bills, or other papers accompanying the shipment. In the case before us the marks on the package and the way-bill disclosed that the subject of the shipment was butter. The employes of defendant were endowed with intelligence which taught them that the season was summer, when warm weather prevailed; that butter in common cars would be greatly injured by the ordinary heat of the climate; and that the butter, as it approached its destination, would be subject, by reason of the change of latitude, to greatly increased heat from the weather. All these things are familiarly known to all men. Surely, the law will presume that defendant's employes had full knowledge thereof. The law required the defendant, having received the perishable cargo involved in this suit, to exercise the care and diligence necessary to protect it; and if improved cars for the transportation of articles of commerce liable to injury from heat were in use, it was defendant's duty to use such cars in carrying the

butter." The learned judge delivering the opinion cites many cases supporting the principles therein announced. We are impressed with the reasoning in that case and are of the opinion that it is applicable to the facts of this case. It is true that it was the custom among shippers of fruit from New York to Texas during the seasons when the weather is so warm that it becomes necessary to ice the cars before shipping the same, to cause instructions to be placed in the bill of lading in reference to icing the car. But it is not the custom to place instructions in the bill of lading where the car is not iced before starting on its journey. The car in which the' apples were shipped was not iced when it started on its journey, and the weather at Medina was cold, the temperature being 10 degrees above zero. The billing by the railroad put the agents of the carrier upon notice that the car was loaded with perishable property and it was the duty of the carrier to use ordinary care to protect it from injury. There was evidence that when the car reached Texarkana, at which point appellant received it, its employe having charge of the car knew that the car was a ventilated car, but he made no inspection of the same to see whether it needed ventilation or to see whether or not the goods were hot or whether the car needed icing, although it is admitted that facilities for icing the car existed at the time at Texarkana. The maximum temperature on the day the car passed through Texarkana was 75 degrees.

It is also contended that the damage to the apples was not due to negligence of appellant in handling same, but the loss, if any, was from decay, due to the inherent character of the apples, the said fruit being what is commonly known as cold storage apples, which the evidence showed spoil rapidly. The evidence shows that the apples when shipped were in good condition and were properly packed and the only reason for their failure to reach Dallas in sound condition was the failure of the carrier to keep the car ·ventilated and properly iced.

It is contended that the evidence showed conclusively, that no part of the damage occurred on appellant's line or while said shipment was in its possession. The evidence does not show that no part of the damage occurred on appellant's line. The appellant was the last connecting carrier and the presumption is that the damage resulted from its negligence. The judgment is affirmed.

*Affirmed.*