EDGAR WILBURN, Respondent, v. WABASH RAILROAD COMPANY et al., Appellants.

St. Louis Court of Appeals, May 31, 1910.

1. COMMON CARRIERS: Carriage of Freight: Delay: Liability of Connecting Carrier. Where an initial carrier and a connecting carrier had an arrangement for the transportation of live stock at a through rate, the connecting carrier, if guilty of delay in transporting, was liable for the damages sustained.

2. ———: ———: ———: ———: Question for Jury. Whether a delay of ten to thirteen hours in the transportation of live stock by a connecting carrier was beyond its power to prevent, or because it did not transport the stock by the first available train, held, under the evidence, for the jury.

3. ———: ———: ———: ———: Terminal Carrier: Agency. Where an initial carrier and a connecting carrier made an arrangement for transportation of live stock at a through rate, a part of which went to a terminal carrier with whom the connecting carrier had an agreement for sending its

freight by the terminal carrier on payment of a fixed compensation, the terminal carrier was, in the absence of any showing to the contrary, the agent of the connecting carrier, so that the latter was liable for any delay of the terminal carrier in transporting cattle.

4. ———: ———: ———: **Joinder of Initial and Connecting Carriers: Carrier Guilty of Negligence Liable: Statute.** Under section 5022, Revised Statutes 1899, as amended by Laws 1905, p. 54, authorizing a shipper suing for injury to freight to join as defendants the original carrier and all connecting carriers and to recover from the carrier through whose negligence the loss was sustained the amount thereof, a shipper of live stock who sues the initial and connecting carriers jointly for damages occasioned by a delay in transportation may only recover from the carrier responsible for the delay.

Appeal from Audrain Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

REVERSED AS TO ST. LOUIS AND HANNIBAL RAILWAY COMPANY.

AFFIRMED AS TO WABASH RAILROAD COMPANY.

*J. L. Minnis* and *Robertson & Robertson* for appellant, Wabash Railroad Company.

(1) The court erred in permitting the plaintiff to testify to conversations with the agent at Perry, Missouri. All such conversations were merged into the written contract. Ingwerson v. Railroad, 103 S. W. 1143; Henning v. Ins. Co., 47 Mo. 425; Sticks v. Matthews, 75 Mo. 96; Weil v. Posten, 77 Mo. 284; Clements v. Yates, 69 Mo. 623. (2) The defendants are connecting carriers and not partners. Sec. 13, Art. 12, Const. of Mo., secs. 1122, 1132, 1134, 1138, 1139, 5222, R. S. 1899; Moore on Carriers, sec. 24, p. 491; McCann v. Eddy, 133 Mo. 59; Grain Co. v. Railroad, 176 Mo. 480; Hutchinson on Carriers, secs. 164-171; 6 Cyc. 478; Live Stock Co. v. Railroad, 87 App. 330; Shewalter v. Railroad, 84 Mo. App. 589; Thomas v. Railroad, 109 Mo. 204; 1 Lindley on Partnership (Ewell), secs. 1 and 2; Ashby

v. Shaw, 82 Mo. 76; Wetmore v. Crouch, 55 Mo. App. 441. (3) Plaintiff failed to comply with the terms of the contract by filing any claim for damages with the general freight agent of the St. Louis & Hannibal Railway Company within ten days. There is no evidence whatever in the case showing that this was waived by either defendant. This provision of the contract has been universally upheld. Davis v. Railroad, 99 S. W. 17; McBeth v. Railroad, 20 Mo. App. 445; Brown v. Railroad, 88 Mo. App. 568; Smith v. Railroad, 112 Mo. App. 610; Bank v. Railroad, 119 Mo. App. 1; Hamilton v. Railroad, 80 Mo. App. 597. Under the terms of the contract of shipment read in evidence the giving of such notice and making claim as provided is a condition precedent to the shipper's right to recover damages caused by delay. Bank v. Railroad, 119 Mo. App. 1. There is no testimony whatever that plaintiff ever complied with those terms of the contract. (4) This defendant was under no obligation to stop its freight trains to pick up stock along its line otherwise than by its scheduled trains. Hutchinson on Carriers, sec. 97. In the absence of a contract with the Wabash Railroad Company to transport his stock by special train, he has no cause of complaint when it was shipped by its first train going in the direction of his market. Dawson v. Railroad, 79 Mo. 296; Ballentine v. Railroad, 40 Mo. 491. A railroad company has the right to appropriate a portion of its trains to carry freight, others to be carriage of passengers, and has a right to have such freight trains stop only at such stations as it may designate by its time tables. 2 Rorer on Railroads, pp. 945, 946; Moore on Carriers, p. 105; 5 Am. and Eng. Ency. of Law (2 Ed.), 163.

*J. D. Hostetter* for appellant, St. Louis & Hannibal Railway Company.

*E. S. Gantt* for respondent.

(1) It is well settled that where common carriers each having its own line formed, what to the shipper is a continuous line and contracted to carry goods through for an agreed price which the shipper pays in one sum and which the carriers divide among themselves, they are jointly and severally liable to the shipper with whom they have contracted for a loss taking place on any part of the whole line. Eckles v. Railroad, 112 Mo. App. 240; Wyman v. Railroad, 4 Mo. App. 35; Barrett v. Railroad, 9 Mo. App. 226; Cherry v. Railroad, 61 Mo. App. 303; Shewalter v. Railroad, 84 Mo. App. 589; Live Stock Co. v. Railroad, 87 Mo. App. 334; Champion v. Bostwick, 11 Wend. 571, 18 Wend. 157; Pattison v. Blanchard, 1 Seld. 186; Cobb v. Abbot, 14 Pick. 289; Railroad v. Spratt, 2 Dwall. 4; Black v. Railroad, 139 Mass. 308; Hart v. Railroad, 8 N. Y. 37; Hutchinson on Carriers (3 Ed.), secs. 250-255; Weyland v. Elkins Holt, N. P. 227; 1 Starkie 272; Laughter v. Pointer, 5b and c, 547; Carter v. Peck, 4 Sneed 203; Cobb v. Abbott, 14 Pick. 289; Fromont v. Coupland, 2 Bing. 170; Rocky Mt. Mills v. Railroad, 119 N. Car. 693, 26 S. E. Rep. 854 and 856; Ann. St. Rep. 682. (2) The rule is well established that, while a common carrier cannot be compelled to do so, it may contract to carry the goods to a point beyond the terminus of its own line and thus assume all of the obligations of the whole route so as to become liable at the commencement and will continue throughout the entire transit. Where it so undertakes to transport the goods throughout to its destination, all connecting carriers employed in transferring and completing such transportation become agents of the initial or contracting carrier, for whose defaults the initial or connecting carrier is responsible to the owner of the goods. Ingwerson v. Railroad, 116 Mo. App. 139; Bank v. Lome, 119 Mo. App. 1; Hardin v. Railroad, 120 Mo. App. 203; Buffington v. Railroad, 118 Mo. App. 476; Davis v. Railroad, 126 Mo. 69, 28 S. W. 965; Eckles v.

Railroad, 112 Mo. App. 240, 87 S. W. 99; Eckles v. Railroad, 72 Mo. App. 296; Lesnisky v. Great Western Dispatch, 10 Mo. App. 134; Clothing Co. v. Merchants Dispatch, 106 Mo. App. 487; Hendrix v. Railroad, 81 S. W. 226, 107 Mo. App. 127, 80 S. W. 970; Hutchinson on Carriers (3 Ed.), 226-230. (3) The shipping contracts included in counts 1 and 2 have been construed by this court and held to be contracts for a through shipment. Ingwerson v. Railroad, 116 Mo. App. 139; Bank v. Railroad, 119 Mo. App. 1.

GOODE, J.—Action for loss on the price of several carloads of cattle, caused by the negligent delay of defendants in transporting them from Perry, Missouri, to National Stockyards, Illinois. The cattle were shipped June 19, 1904, from Perry, a station on the line of defendant, the St. Louis & Hannibal Railway Company. The line running through Perry is a branch which connects with the main line of that company at New London, and from the latter station the cattle were hauled by it to Gilmore, the terminus of its line, and where connection is made with the line of defendant, Wabash Railroad Company. From Gilmore the Wabash Company carried the cattle to Luther, or a mile or so south of Luther, and turned them over to the Terminal Association, which carried them across the Mississippi river to the National Stockyards. Plaintiff hired a special train at Perry to haul the cattle to New London, there being no regular freight train of the St. Louis & Hannibal Company leaving said station on the day of shipment. This circumstance had nothing to do with the delay, for the cattle reached New London on the main line of said company on time, and caught the regular freight train from New London to Gilmore, arrived at the latter point on time and were immediately turned over to the Wabash Company. They reached Gilmore at 10:30 p. m., June 19th, and lay there until 8:30 the next morning, or ten hours. Meanwhile two freight

trains passed, but the Wabash agent said they were overloaded. From one to three hours delay occurred between Gilmore and Luther. The trainmaster of the Wabash Company testified the cattle were taken from Gilmore by the first "available train;" but the only reason shown why the two trains which passed, one at twelve and the other about two o'clock of the night the cattle reached Gilmore, did not take up the cattle in question, was they were overloaded. There is some testimony to prove delay of an hour occurred on the Terminal Association's line after the cattle were turned over to it by the Wabash Company, which was at 1:12 o'clock, June 20, 1904. The cattle did not get to the National Stockyards until three o'clock, when the market for the day was over and they had to be sold the next day at a lower market. It should be stated the testimony shows without dispute there was an arrangement between the St. Louis & Hannibal Company and the Wabash Company by which cattle were "billed through" by the St. Louis & Hannibal Company from Perry to the National Stockyards, at a through rate for the whole distance, of which four dollars went to the Terminal Association or the ferry company at St. Louis—the carrier chosen by the Wabash Company to transport the cattle across the Mississippi river. Plaintiff's cattle were billed through pursuant to the arrangement between the defendants. As regards the connection of the Terminal Association, which transported the particular shipment over the river with the arrangement between the two defendants, Richard Burger, freight accountant of the Wabash Company, testified four dollars was charged as a toll for carriage across the river; that the bridge company was not "consulted in the matter of the authority of the St. Louis & Hannibal Company to bill through to the National Stockyards;" that there was an arrangement between the Wabash Company "and the bridge or ferry company, whereby the Wabash Company may send its freight over the bridge or ferry on payment of a certain

compensation." There is no proof the Terminal Association (otherwise called the Bridge Company) occupied any position in respect of the shipment, than agent for the Wabash Company. This action for damages was instituted against the St. Louis & Hannibal Company and the Wabash Company, and the issues joined by the pleadings would make it similar to Crocket v. Railroad, 147 Mo. App. 347, 126 S. W. 243, but for two reasons: The bills of lading were not introduced in evidence in the answer; and the testimony conclusively proves the negligent delay happened after the cattle had been delivered by the first carrier, the St. Louis & Hannibal Company, to the Wabash Company. That is to say, the delay, if caused by the fault of either carrier which handled the freight, is to be ascribed to the fault of the Wabash Company or its agent, the Terminal Association. Therefore the various points discussed in the briefs regarding the instructions and contention that the right to recover depended on the two defendants being partners, or on a joint undertaking by them to transport the cattle, are immaterial. Whatever the facts about those matters may have been, it is certain the Wabash Company was answerable for losses due to its own carelessness, or the Terminal Association's. Halliday v. Railroad, 74 Mo. 159, 162.] The question of whether the loss occurred from the fault of the Wabash Company was left to the jury in an instruction too favorable to that defendant; for it was exonerated from delays caused by the Terminal Association. The court instructed there was no evidence the Wabash Company made a contract with plaintiff to ship cattle from Perry to the National Stockyards; that all the proof showed was merely that said company was a line connecting with the St. Louis & Hannibal Company's line at Gilmore and with the Terminal Association's line at Grand avenue, in St. Louis; that the Wabash Company was not liable for any delay on the line of the St. Louis & Hannibal Company or the Terminal Bridge Company east of

Grand avenue; that the Wabash Company did not agree with plaintiff it would transport the cattle over its line at any particular time, or would deliver them to the Terminal Company at Grand avenue at any particular time, or agreed to deliver to the National Stockyards; that though the jury might find there was a delay at Gilmore after the cattle were delivered to the Wabash Company, yet if they further found the Wabash Company moved said stock in the first available train going eastward that could take the stock, and delivered the same in a reasonable time to the Terminal Company at Grand avenue, the verdict should be in favor of the Wabash Company. It will be perceived said instruction exonerated the Wabash Company unless the delay was due to some omission of duty on its part, as the evidence well nigh certainly proved was the case. It did prove certainly a delay of from ten to thirteen hours occurred while the cars were in said company's charge, and it was for the jury to say whether this was because it did not ship the cattle from Gilmore by the first available train and thereafter deliver them within a reasonable time to the Terminal Association, or whether the delay was beyond its power to prevent. If the Wabash Company was remiss, as the jury found, but nevertheless the stock would have reached the National Stockyards for the market of the 20th, but for subsequent delay on the Terminal Association's line, this fact is no defense; because, on the record, the Wabash Company was responsible for the default of the Terminal Company, if such there was.

The judgment against the Wabash Company was right and will be affirmed. It will be reversed as against the St. Louis & Hannibal Company, because the evidence shows said company was not in default, and plaintiff having elected to sue both the carriers jointly, his recovery must be restricted to the one proved to be responsible for the delay. [R. S. 1899, sec. 5022, as amended by Laws 1905, p. 54.] All concur.