RIO GRANDE, E. P. & S. F. R. CO. et al.
v. KRAFT & MADERO. (No. 989.)

(Court of Civil Appeals of Texas. El Paso.
May 22, 1919. Rehearing Denied
June 19, 1919.)

1. CARRIERS &#x21D0;228(5)—CARRIAGE OF LIVE STOCK—ACTION FOR INJURIES TO SHIPMENT—EVIDENCE—SUFFICIENCY.

In a shipper's action against a carrier for injuries to a shipment of live stock, evidence *held* sufficiently definite and certain as to the number and kind of animals injured or killed and the amount of damages to sustain a verdict for plaintiff.

2. CARRIERS &#x21D0;230(11)—CARRIAGE OF LIVE STOCK — INSTRUCTION — LIABILITY AS DEPENDENT UPON AGENCY.

In a shipper's action for injuries to live stock, it was not error to refuse to instruct that defendant was not liable for injuries occurring while the cattle were being switched by another road at destination, where such road was not acting as a connecting carrier, but as defendant's agent to do the switching.

3. APPEAL AND ERROR &#x21D0;1068(5)—REVIEW—HARMLESS ERROR.

In a shipper's action for injuries to shipment of live stock, error in refusing to charge that defendant was not liable for damages accruing during switching operations by the agent of a connecting carrier was harmless, where it appeared that no damages were assessed against defendant for injuries incurred during the switching operation.

4. TRIAL &#x21D0;256(13)—AMBIGUOUS INSTRUCTIONS—NECESSITY OF REQUEST.

Where in a shipper's action against connecting carriers a proper instruction is not sufficiently clear that damages are to be assessed separately, a special charge to that effect must be requested.

5. CARRIERS &#x21D0;219(1)—LIVE STOCK—INTERSTATE SHIPMENTS—ISSUANCE OF NEW BILL OF LADING.

Where a shipment of live stock is interstate, the terms of the original bills of lading issued by the initial carrier cover the entire transportation and the liability of the initial carrier, notwithstanding that new bills of lading are issued by the connecting carrier.

6. CARRIERS &#x21D0;230(12)—CARRIAGE OF LIVE STOCK—INSTRUCTIONS—EVIDENCE.

In a shipper's action for injuries to a shipment of live stock, it was not error to refuse to instruct that there was no evidence of the kind or character of the animals killed, and in no event to find value in excess of the cheapest grade of animals in the shipment, where there was evidence that the dead animals were an average of the shipment.

7. CARRIERS &#x21D0;219(5)—CARRIAGE OF LIVE STOCK—LIABILITY OF CONNECTING CARRIERS—DESTINATION OF SHIPMENT.

Where a connecting carrier transporting a shipment of live stock delivers it to another road acting as its agent, and not as a connecting carrier to be switched to stockyards for unloading at destination, the initial carrier is liable for injuries sustained during such switching operations; the destination of the shipment being the stockyards, and not the railroad yards.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Kraft & Madero against the Southern Pacific Company, the Rio Grande, El Paso & Santa Fé Railroad Company, and the Atchison, Topeka & Santa Fé Railway Company. Judgment for plaintiffs against all the defendants, and the two last-named defendants separately appeal, while the defendant first named brings error. Affirmed.

Beall, Kemp & Nagle and Turney, Burges, Culwell, Holliday & Pollard, all of El Paso, for appellants.

E. M. Whitaker, of El Paso, for appellees.

HIGGINS, J. This action was brought by Kraft & Madero, appellees, against the Southern Pacific Company, Rio Grande, El Paso & Santa Fé Railroad Company, and Atchison, Topeka & Santa Fé Railway Company, appellants, to recover damages to two shipments of cattle made in May and June, 1917. The first shipment consisted of 27 cars containing about 1,300 head and originated at Amada and Calabasas stations on the line of the Southern Pacific in Arizona. The second shipment consisted of ten cars containing about 470 head and originated at Tucson station, on the line of the Southern Pacific in Arizona. The shipments moved from their points of origin over the line of the Southern Pacific to El Paso, Tex., where they were unloaded, rested, fed, and watered. Thence they moved to Denver, Colo., over the lines of the two Santa Fé Companies. The evidence discloses that the initial carrier billed the shipments for through transportation to Denver, but that, when they were received at El Paso by the Rio Grande, El Paso & Santa Fé Railroad Company, such company issued new bills of lading for through shipment from El Paso to Denver. The court in its charge submitted the issues of negligent rough handling and negligence in furnishing a defective car with a hole in its floor. Verdict was returned and judgment rendered in favor of plaintiffs against the Southern Pacific Company and Atchison, Topeka & Santa Fé for $4,176.90, and against the Southern Pacific Company and Rio Grande, El Paso & Santa Fé for $120. The two Santa Fé Companies prosecute separate appeals, and the Southern Pacific prosecutes writ of error. The appeals of the Santa Fé Companies are presented in one brief and will be first considered.

---

&#x21D0;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Opinion.

The first assignment questions the sufficiency of the evidence in that it is indefinite and uncertain as to the number of animals of the various ages and kinds killed or injured as well as the amount of damages thereto.

[1] The first shipment contained 1,300 head of one, two, and three year old steers. There is evidence that at least 40 head thereof died as the result of rough handling. The yearlings were the least valuable in the shipment, and witness Riddle testified they would have been worth $39 per head if they had arrived in proper condition. These 40 yearlings were therefore worth $1,560. As to the remaining 1,260 head the evidence is not altogether satisfactory, but we believe the testimony of the witnesses Lunt and Riddle was sufficient to support a finding that there was an average damage of at least $3 per head thereto, which in the aggregate would total $3,780. This, added to the value of the dead animals, would make $5,340, while the verdict and judgment is for but $4,176.90. The assignment is therefore overruled.

[2] Upon arrival of the first shipment at the Denver railroad yards, the Atchison, Topeka & Santa Fé turned the same over to the Colorado & Southern Railway Company to be switched to the Denver stockyards for unloading. There is evidence that some damage thereafter occurred while the cattle were in the possession of the Colorado & Southern. The Atchison complains of the refusal of an instruction that it was not liable for death or injury occurring while the cattle were being switched by the Colorado & Southern. The record discloses that the Colorado & Southern does the switching to the stockyards for the Atchison at Denver. It thus was not acting as a connecting carrier, but as the agent of the Atchison in this switching movement. The charge was properly refused. Wilburn v. Railway Co., 148 Mo. App. 692, 129 S. W. 484; Railway Co. v. Jackson, 55 Tex. Civ. App. 407, 118 S. W. 853; Railway Co. v. Scoggin, 40 Tex. Civ. App. 526, 90 S. W. 521; Railway Co. v. Phillips, 197 S. W. 1031.

[3] The Rio Grande, El Paso & Santa Fé Railroad Company likewise complains of the refusal of a charge to the effect that it was not liable for any damages accruing during the switching operation in Denver. This charge should have been given, as this carrier was an intermediate carrier, and liable only for the damages accruing on its own line. But upon the record the refusal of the charge resulted in no injury. The charge of the court submitting plaintiff's theory of the case was as follows:

"Now, if you find that the defendants, or either of them, while the cattle were in the charge of them, or either of them, for transportation, bumped, jerked, and jarred the same, and you further find that the defendants, or either of them, were negligent in so bumping, jerking, and jarring the cattle in the cars, if they did so, and that the cattle were damaged and injured by such bumping, jerking, and jarring, if they were, and you further find that the negligence of the defendants was a proximate cause of the injury and damage to the cattle, if any, you will find for the plaintiffs against the defendant or defendants so negligent and the defendant Southern Pacific Company, notwithstanding, as the court instructs you, that no negligence was shown on the part of the Southern Pacific Company. If you find that one of the cars furnished by the defendants, or either of them, for the transportation of said cattle, had a hole in the floor at the time it was so furnished, and you further find that the defendants, or one of them, were negligent in providing a car, if any, with a hole in the floor, and you further find that such negligence, if any, proximately caused the injury and damage to three head of plaintiffs' cattle, as complained of by plaintiffs, the defendant so furnishing and using said car and the Southern Pacific Company would be liable to plaintiffs for the damage so caused, not to exceed, however, $142, as damages caused by such hole, if any."

The verdict and judgment against the Rio Grande, El Paso & Santa Fé was for $120 only. The injuries inflicted in Denver by the switching movement was to the first shipment. The only evidence tending in any wise to charge the Rio Grande, El Paso & Santa Fé was for injuries to three steers in the second shipment killed by getting their feet in a hole in the floor of a car furnished by this appellant when it received the cattle at El Paso. It is thus manifest that the jury by its verdict has assessed against this appellant only the value of these three animals killed by reason of the hole in the car furnished by it, and assessed no damages against it for any of the injury to the first shipment inflicted by the switching operation in Denver. It thus being apparent that no injury resulted to this appellant by the refusal of the charge, its refusal is not reversible error. Rule 62A (149 S. W. x).

The fourth assignment which is presented by both of the Santa Fé Companies is as follows:

"The court erred in failing and refusing to confine the recovery as to these defendants to such loss or injury as may have occurred on their respective lines, as neither of them were the initial carrier, and were only liable for such loss or injury as occurred while the shipments were in their respective possessions."

[4] There was no negligence shown on the part of the Southern Pacific Company, and the court so instructed the jury. Considering the quoted portion of the charge, we think it fairly indicated to the jury that as against the two Santa Fé Companies the damages assessed, if any, were to be assessed respectively against the company upon whose line

the injury and damage was inflicted. If it was not sufficiently clear in this particular, a special charge should have been requested. Considering the evidence in the case, the jury evidently severally assessed against the Santa Fé Companies the damages for which they were respectively liable and no more.

What has heretofore been said disposes of the remaining assignments of the Santa Fé Companies.

[5] We pass now to the consideration of the appeal of the Southern Pacific Company. Its first assignment is predicated upon the theory that the court erred in submitting any issue of liability on the part of the Southern Pacific Company, because the uncontroverted evidence discloses that all of the damage to the two shipments occurred after they had passed from its possession at El Paso, at which point they were received by the Rio Grande, El Paso & Santa Fé, which issued new bills of lading for transportation from El Paso to Denver. The circumstances under which these second bills were issued is not disclosed by the record. It appears that the Southern Pacific Company, the initial carrier, issued bills of lading for through transportation from the points of origin to Denver. Since these were interstate shipments, the terms of the original bills issued by the Southern Pacific Company govern the entire transportation, and the liability of the initial carrier was not altered by the issuance of the second bills by the Rio Grande, El Paso & Santa Fé Railway Company at El Paso. Missouri, K. & T. Ry. Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. 617, 61 L. Ed. 1213. Under the federal law the Southern Pacific Company, as the initial carrier, was liable to the appellees for any damage accruing upon the line of any of the connecting carriers. There is, therefore, no merit in this assignment.

[6] The second assignment complains of the refusal of an instruction that there was no evidence of the kind or character of the animals killed in the first shipment, and in no event to find a value in excess of the cheapest grade of the animals in this shipment on account of the dead ones. This charge was properly refused because there was evidence that the dead animals were an average of the shipment.

[7] The third assignment proceeds upon the theory that the Southern Pacific Company could not be held liable for any injury accruing to the shipment after its arrival at Denver and while they were being switched to the Denver stockyards by the Colorado & Southern Railway. As has been heretofore indicated, when the first shipment reached the Denver railroad yards the Atchison Company turned the same over to the Colorado & Southern to be switched to the stockyards for unloading. The Colorado & Southern in this matter acted, not as a connecting carrier, but as the agent of the Atchison in making the switching operation. The duty of the carriers in this case did not terminate upon the mere arrival of the shipment in the railroad yards at Denver. It was their duty to deliver the same in Denver at the proper unloading place, which, of course, was the stockyards, and not the railroad yards. Therefore the liability of the Southern Pacific Company, as the initial carrier, did not terminate until the shipments had been delivered at the stockyards in Denver, and there was therefore no error in refusing a charge which relieved it from liability for damage accruing while the cars were being switched from the railroad yards of the Atchison Company in Denver to the stockyards.

The fourth assignment asserts that the evidence is insufficient to support the judgment. This has heretofore been considered and passed upon in considering the appeal of the Santa Fé Companies.

The remaining assignments of this appellant relate to questions which have been determined adversely in what has heretofore been said, and there is no occasion to further discuss the same.

Finding no reversible error the judgment is affirmed.