## FT. WORTH & R. G. RY. CO. v. HASSE.
### (No. 6255.)

(Court of Civil Appeals of Texas, · Austin. Nov. 10, 1920. Rehearing Denied · Jan. 5, 1921.)

**I. Appeal and error ⊚⟾664(4)—Bill not sustained by statement of facts presents no question.**

Where statement of facts fails to show any testimony given by a witness on the question of reasonable time for shipment of stock as complained of in a bill of exception, assignment that court erred in overruling objection to question, "Please state whether or not these cattle were in such condition to stand the trip if they had been handled in the usual and ordinary manner and had reached their destination in a reasonable time in a car that was bedded in the usual way," and an answer, "I ٰthink they would have stood the trip all right," cannot be sustained on appeal.

**2. Carriers ⊚⟾228(3)—Testimony as to loss of stock on other shipments admissible.**

. In an action for damages to shipment of stock by reason of negligent delay and improper bedding, it was permissible for plaintiff to testify as to whether he ever had any cattle killed in the same quantity at any other time when shipped over defendant's road.

**3. Carriers ⊚⟾219(4)—Must notify shipper of stock of congestion at connecting point to excuse delay.**

. A carrier should' notify a shipper of stock of a crowded and conjested condition at a connecting point which would cause delay in shipments, and, failing to do so, such congested condition would be no excuse for delay in shipment.

**4. Carriers ⊚⟾228(1)—Burden on carrier to excuse prima facie unreasonable delay.**

A prima facie case of unreasonable delay having been shown in an action by a shipper for damages to a shipment of stock, it was incumbent upon the defendant to prove·a valid excuse.

**5. Carriers ⊚⟾215(1)—Switching company agent for whose negligence in delivering shipment of stock carrier is liable.**

Where carrier undertook transportation and· delivery of stock at a certain point and employed a switching company as its agent and instrumentality to make the delivery, the switching company was its agent for whose negligence it was as much liable as for negligence occurring on its own line, and it .was liable for damages to the cattle and loss occaˀsioned by unreasonable delay.

**6. Carriers ⊚⟾219(1)—Switching company held not a connecting carrier.**

In an action for damages to a shipment of stock occasioned by unreasonable delay, *held,*

that a switching company, although it might be regarded as a transportation company, was not a connecting carrier for whose negligence defendant would not be liable.

**7. Carriers ⊚⟾215(1)—Cannot delegate duty to switching company to provide facilities for delivering.**

Carrier, having contracted to deliver a shipment of stock to certain parties at a certain point, could not delegate its duty to provide proper facilities for delivering the stock in question to a switching company and thereby escape liability for the negligence of the switching company, under Rev. St. 1911, art. 6687.

**8. Pleading ⊚⟾11—Not necessary' to allege evidential facts.**

The plaintiff need not allege evidential facts upon which he relies.

Appeal from McCulloch County Court; Evⴰàns J. Adkins, Judge.

Suit by J. W. Hasse against Fort Worth & Rio Grande Railway Company. · Judgment for plaintiff and defendant appeals. Affirmed.

Appellee sued appellant to recover damages, arising out of two shipments of cattle from Brady, Tex., to Ft. Worth, Tex. It was alleged that the cattle were accepted by the ·carrier for transportation and delivery to a commission company, plaintiff's agent, at North Ft. Worth, Tex. The cattle in each instance were intended to be sold on the live stock market, at Ft. Worth, the next day. *Plaintiff* relied for recovery upon alleged negligence of the railway company, in unreasonably delaying the shipment and transportation of the cattle, and of its agents at North Ft. Worth, and upon improper bedding of one of the cars. He alleged depreciation in weight, and that several cows and one calf were killed in transit by reason of the improper bedding of such car, and a decline in the market.

The railway company denied liability generally, and specially pleaded that it contracted to transport and carry said shipment only over its own line of road, and that it did not have a line connecting Brady with North Ft. Worth, and that it did not agree to carry the shipments beyond its own line of railway at Ft. Worth; that the shipments were carried and transported with due diligence to Ft. Worth, and there turned over to its alleged connecting carrier, the Ft. Worth Belt Line, in time for the market, as contemplated by the contract. It was also alleged by the defendant that, if there was any delay at Ft. Worth in handling the shipments by the Belt Line, it was caused .by an unusual rush of business in' the stockyards and markets, 'and a congested condition then existing at the stockyards,· caused by ·the extreme drouth existing over Texas.

Plaintiff filed a trial amendment, designed to meet some of the defenses pleaded by the railway company. The case was tried with-

---

out a jury, and the court rendered judgment for the plaintiff in the sum of $610.

The findings of fact and conclusions of law filed by the trial judge, at the request of defendant, which we adopt, show that the court found that as to the first shipment the cattle were delivered to defendant on September 3, 1917, and because of the shortage of cars that day it was mutually agreed that the three cars in that shipment might be held over until the 4th of September and then shipped; that the usual time for loading and shipment at Brady was from 2 to 3 p. m. or a little later, and when so loaded the shipments usually reached the West Yards belonging to defendant at Ft. Worth between 5 and 6 o'clock the next morning, and were unloaded at the stockyards and delivered to the commission company about 7 or 8 o'clock a. m., in time for that day's market.

As to the second shipment, consisting of two cars: The cattle were delivered in defendant's pens at Brady the night of September 10th, for shipment on the afternoon of September 11th. That the carrier accepted both shipments for transportation and delivery at the Ft. Worth stockyards, and agreed so to do. That the first shipment was loaded between 2:55 and 6:30 p. m. on September 4th, and the second shipment was loaded about 2 to 3 o'clock September 11th. The shipment of September 4th arrived in part at 9 a. m., and in part at 10:15 a. m., September 5th, at defendant's West Yards, South Ft. Worth. That the first shipment was not delivered to the Belt Railway in North Ft. Worth until 11:30 a. m., but should have been delivered by 10:15. The usual time for the Belt to make deliveries, after receiving live stock, is about one hour; the cattle being spotted at the unloading chutes at the stockyards, and by the stockyards company unloaded into the pens of the commission company, and perhaps 1½ hours usually elapsed after receiving the same from the defendant railway company until actually delivered to the commission company. And that, if this had been done, the shipment would have been in the commission company's pens around noon that day, and in time for the market of that day.

The court further found delay at Brady, in loading the cattle and pulling out at the usual time, by reason of which the Belt and stockyards companies were given about three hours less time than they would have had in getting the cattle on the market if it had not been for the delay.

The court also found shrinkage, and decline in the market, showing a loss to plaintiff of at least the amount claimed by him. The court further found the railway company was negligent in not properly bedding one car, and in additional rough handling, resulting in the death of five cows; and that a calf in another car was dead on arrival at North Ft. Worth. Plaintiff went with this last shipment to the West Yards, and arrived there about noon of September 12th, but was not with the cattle from there to North Ft. Worth, nor until unloaded.

The court found a delay of about six hours in the shipment of September 11th, and a delivery to the Belt at about 2:40 p. m. on September 12th; and further delay by the Belt and stockyards companies in switching and delivering the cattle, resulting in their having to be held until the next day's market. For depreciation in weight and the value of the cows and calf that were killed, the court found that plaintiff was damaged in excess of his demand.

There was also a finding that the defendant had a line of railway to within one-half mile of the stockyards, and had no facilities in Ft. Worth for unloading and delivering stock, employing the Belt Railway Company to spot its cars, and the Ft. Worth stockyards and pens in which to unload and make deliveries to consignees; and that the Belt Line and stockyards companies are the agents of defendant, paid and employed by it, and perform no services for shippers; that the defendant engaged and agreed to transport and deliver the stock to the consignee at North Ft. Worth.

The conclusions of law were substantially that the delay in the shipments being unreasonable was negligence and a breach of the defendant's contract to transport and deliver in reasonable time; that the belt and stockyards companies being employed by defendant alone, and being only switching and unloading companies on behalf of defendant, were defendant's agents, and any delay due to their failure to deliver in a reasonable time was chargeable to the defendant, so far as the plaintiff was concerned, and that he was entitled to recover against defendant for the negligence of said companies as well as the negligence of defendant.

J. L. Lockett, Jr., of Ft. Worth, and Sam McCollum, of Brady, for appellant.

C. A. Wright, of Ft. Worth, for appellee.

BRADY, J. The first question in the brief for appellant relates to the alleged error of the trial court in permitting the plaintiff while on the stand as a witness for himself to be asked and to answer, over the objection of defendant, the following question:

"Please state whether or not these cattle were in such condition to stand the trip, if they had been handled in the usual and ordinary manner, and had reached their destination in reasonable time, in a car that was bedded in the usual way."

The answer to the question was: "I think they would have stood the trip all right."

[1] In substance, the objection to this question and to the answer was that the same called for the conclusion of the witness upon a mixed question of law and fact, and

would permit the witness to determine the very issue to be tried by the court. The bill of exception shows the question and answer as stated in the assignment, but the statement of facts does not bear out the bill. The testimony of Hasse, as shown in the statement of facts, does not disclose that he expressed any opinion or made any statement as to whether the cattle were transported within a reasonable time. It does show that this witness testified that the cattle were in good shipping condition, and in fact were strong enough to stand the trip, if handled in the usual way. But a close scrutiny of the statement of facts fails to discover any testimony given by this witness on the question of reasonable time, as complained of in the bill of exception and in the assignment. In this state of the record, we cannot tell what the facts are, and are therefore unable to sustain the assignment, which will be overruled.

[2] The second assignment claims error in the action of the trial court in having permitted Hasse to be asked the following question, and to give the following answer:

"Did you ever have any cattle killed in this same quantity as in this shipment at any other time when shipped over this road?" Answer: "No, never more than one at a time."

The objections urged in the trial court were that the question and answer were immaterial and irrelevant, did not tend to shed any light on the issues of the case, and were prejudicial to the defendant. We think the testimony was material and relevant, and as against the objections urged was admissible; for which reason this assignment also is overruled.

There are certain assignments attacking the court's findings because not supported by any evidence or pleadings, or because in the face of the undisputed facts. We think it unnecessary to discuss these assignments, but we have carefully considered the same in connection with the court's findings and the evidence in the record, and they are believed to be without merit, and are overruled.

[3] As to the question presented by some of the assignments that the undisputed testimony showed that the delay of the shipments at Ft. Worth was occasioned by the crowded and congested conditions existing at the stockyards, we think it is sufficient to say that it was not pleaded and proven by the railway company that it had given plaintiff any notice of such conditions, and of its inability by reason thereof to insure delivery within the time contemplated by the agreement made between the carrier and the shipper. Ry. v. Stark, 103 Tex. 542, 131 S. W. 410; Ry. v. Hannay-Frerichs Co., 104 Tex. 603, 142 S. W. 1163.

[4] Some of the assignments also urge that the undisputed evidence shows that the delay in part was due to delays ordinarily incident to the company's business, and to conditions over which it had no control. We cannot agree to this contention, in view of the record, and we think the court was justified in his findings of negligence. A prima facie case of unreasonable delay having been shown, it was incumbent upon the defendant to prove a valid excuse, and we do not think this burden was met by defendant. At all events, there was ample predicate in the evidence for the court's conclusions.

[5, 6] As to the claim presented in other assignments, that the defendant had no line of railway from Ft. Worth to North Ft. Worth, and to the stockyards, it is sufficient reply to say that the carrier undertook the transportation and delivery of the live stock to the commission company at the latter point, and it employed the Belt Line and stockyards companies as its agents and instrumentalities to make the delivery, and they were therefore its agents, for whose negligence defendant was as much liable as for negligence occurring on its own line. It did not undertake to provide switching and unloading facilities of its own, and the duty to make delivery within a reasonable time, at the point of destination agreed upon, was not delegable to a switch company and a delivering company employed by the defendant for this purpose. While the Belt Line Company might properly be regarded as a transportation company, it was not a connecting carrier under the facts of this case, for whose negligence defendant would not be liable.

[7] In addition to article 6687, Revised Statutes of 1911, as authority for the proposition that defendant could not delegate its duty to provide proper facilities for delivering the live stock in question, and escape liability for the negligence of agencies employed by it, we cite the following cases: Ry. v. Phillips, 197 S. W. 1031; Ry. Co. v. Kraft & Madero, 212 S. W. 983.

[8] This disposes of all the questions raised in the brief, except the ninth assignment of error, which complains of the trial court's action in overruling a special exception to the plaintiff's amended petition, which was in substance that he had not pleaded facts showing negligence but merely conclusions. We have examined the petition and also the trial amendment, and we think the grounds of negligence were sufficiently alleged, including defendant's failure to load the cattle and pull out from Brady in time, which seemed to be the chief cause of the delay of the shipment of September 4th to reach Ft. Worth in time. It was not necessary for plaintiff to allege evidential facts upon which he relied, and we think the pleadings sufficient.

Because we have concluded that no reversible error has been shown, the judgment is affirmed.

Affirmed.