## LANCASTER et al. v. HOLLEBEKE et al. (No. 1276.)

(Court of Civil Appeals of Texas. El Paso. Dec. 21, 1921.)

**1. Carriers ⬳209—Carrier liable for defective cars furnished by belt line for reloading cattle.**

A carrier, delegating to a belt line railroad its duty to unload shipped cattle at stockyards where they could be unloaded, fed, and watered, and to furnish proper cars for reloading them, was liable for the belt line's furnishing defective cars for reloading the cattle.

**2. Carriers ⬳230(9) — In suit against initial carrier, instruction held not so general as to permit jury to consider injuries on connecting line.**

Where in a suit against an initial carrier the petition only complained that cars furnished for reloading horses on its line where they were unloaded were defective, and that they were roughly handled only between that point and the end of defendants' line, and the evidence does not show the condition of the cars of the connecting carrier into which they were reloaded, and plaintiff testified there was no difference between their condition then and when they reached their destination, except that wounds were a little more affected, and evidence showed rough handling on defendants' line and no injury afterward, an instruction for plaintiff if the jury found "defendants failed to provide such cars" as an ordinarily prudent person would have provided, and they were injured by defects in "said cars," or defendants negligently caused or permitted "said cars" to be bumped, etc., clearly referred to injuries received in cars for reloading, furnished by defendants, and was not too general as permitting the jury to consider movements from the point of origin to final destination, and so to consider injuries which might have occurred on the line of the connecting carrier.

**3. Carriers ⬳229(2)—Damages to stock based on value at place of destination.**

In shipper's action for damages to stock shipped, *held*, that the point of destination was the place for determining the difference in the value of the animals, in computing damages.

**4. Carriers ⬳228(3) — Evidence that stock died after arrival at destination held admissible.**

.In shipper's action for damages to stock shipped, it was proper to permit one of the

---

plaintiffs to testify to the condition of the stock upon arrival at the point of destination, and that five head died after such arrival; it being for the jury to determine whether the condition of the animals and the death of five of them after arrival was caused by injuries received in shipment.

Appeal from District Court, Reeves County; Chas. Gibbs, Judge.

Action by Ed Hollebeke and others against J. L. Lancaster and others, receivers. From a judgment for plaintiffs, defendants appeal. Affirmed.

Jno. B. Howard, of Pecos, for appellants. W. A. Hudson, of Pecos, for appellees.

HIGGINS, J. Appellees brought this suit against the appellants, receivers of the Texas & Pacific Railway Company, to recover damages to a shipment of horses and colts moving from Pecos, Tex., to Shreveport La., over the line of the Texas & Pacific Railway Company, via Fort Worth, and from Shreveport to Brandon, Miss., over the lines of connecting carriers. Verdict was returned and judgment rendered for $1,010, with interest, and the receivers appeal.

Appellees alleged that the animals were loaded at Pecos and remained on the cars 37 hours before they were unloaded, fed, and watered at Fort Worth; that at Fort Worth they were reloaded and remained in the cars 42 hours before they were fed and watered at Shreveport. It was further alleged that when the animals were reloaded at Fort Worth they were placed in old cars with rails protruding therein and roughly handled in transportation from Fort Worth to Shreveport, and that by reason of the condition of the cars and said rough handling the animals were so badly cut and bruised that five head died, and that by reason of the said condition of the cars and said rough handling and failure to unload, feed, and water the balance of the animals were badly cut and bruised, and so starved that they ate each other's tails off, and were rendered gaunt and drawn so as to almost destroy their value. Judgment was asked for the value of the animals which died and damages to the rest.

It appears that upon the arrival of the shipment at Fort Worth it was delivered by the Texas & Pacific to what is referred to in the evidence as "the Belt," which took them to the stockyards, where they were fed and watered and reloaded. It is contended by appellants that they are not liable for the injury and damages sustained by the animals by reason of the improper condition of the cars into which they were reloaded at Fort Worth because the animals were shipped with the Fort Worth privilege, which means that appellees had the right to terminate the transportation at Fort Worth and sell the animals there, and that, since the delivery to the Belt at Fort Worth was made because of the Fort Worth privilege, these appellants are not liable for the action of the Belt in reloading into defective cars, and that, since all of the damage resulted from the defective cars into which the horses were thus reloaded by the Belt, a peremptory instruction should have been given in appellant's favor. But there is nothing in the evidence to show that the shipment was made with the Fort Worth privilege. The bill of lading provides for the transportation of the shipment from Pecos to Shreveport consigned to P. L. Hollebeke at Brandon, Miss., and is wholly silent as to the privilege indicated. Nor is there anything in the evidence to show that the delivery to the Belt was made at the instance of appellee. P. L. Hollebeke, who accompanied the shipment, testified:

"I do not remember whether under my contract I had what was called 'Fort Worth privilege' or not. I did not try to sell them in Fort Worth. Ed was with me. We did not try to sell them there. The railroad company fed them, I suppose; I do not know who, but just like any other stock you would ship to Fort Worth. I do not know that it was the stockyards company. * * * I was there when they were reloaded out. There were three cars. They were not loaded in the same cars they left Pecos in. They were loaded in different cars. I was there when they were loaded in the stock cars. They were loaded in old cars. I made objection to the men loading them and told them that they were not fit to load in, but I could not get any satisfaction. I even talked to the agent. As to whether I refused to accept those cars, well, how could I? I did not know whether I could or not. I tried to get them to give me good cars. I know that. They were loaded by the Belt at 4 p. m. They were taken down to the car yards and put on the T. & P."

[1] It was the duty of appellants to deliver the shipment in Fort Worth at stockyards where they could be unloaded, fed, and watered, as by law required, and when the journey was to be resumed to furnish proper cars into which they might be reloaded. If it delegated this duty to the Belt, it is answerable for an improper discharge of the same. So far as this record is concerned, it appears that the unloading and reloading in Fort Worth was simply such as is always necessary when live stock is shipped a long way. In furnishing the defective cars the Belt therefore must be regarded as the agent of appellant. Railway Co. v. Kraft & Madero, 212 S. W. 981; Railway Co. v. Phillips, 197 S. W. 1031; Railway Co. v. Scoggin, 40 Tex. Civ. App. 526, 90 S. W. 521; Railway Co. v. Jackson, 55 Tex. Civ. App. 407, 118 S. W. 853; Wilburn v. Railway Co., 148 Mo. App. 692, 129 S. W. 484.

For the reason indicated, all assignments are overruled which are predicated upon the theory that appellants are not liable for the

injury and damage caused by the defective cars furnished at Fort Worth.

[2] Objection is made to the court's charge upon the ground that it was too general, the propositions advanced being as follows:

"(1) The cause being an action upon specific acts of negligence occurring between Fort Worth and Shreveport, and, the shipment having moved from Pecos, Tex., to Brandon, Miss., the court should not give in charge to the jury a general charge in that it permits the jury to consider the movement of the stock from the point of origin to destination, and take into consideration any injuries which might have occurred to the stock on any other portion of their journey, and the court should have limited its charge to the specific places alleged in plaintiff's petition.

"(2) The court's charge should be limited to the damages and necessary injuries resulting therefrom on the allegation of plaintiff's petition, and a charge which permits the jury to consider injuries to the stock after they had been transported some 400 or 500 miles over a different line of railroad, and in the same cars complained of, is too general and should have been limited."

That portion of the court's charge submitting the plaintiff's side and against which the objections are leveled reads as follows:

"No. 5. Now, if you find from the evidence that the defendant failed to provide such cars for the shipment of said horses as an ordinarily prudent person would have provided under the same or similar circumstances, and if you find that said horses were injured by defects in said cars, or if you find that the defendant negligently caused or permitted said cars to be bumped or jammed together, and if you find that said horses were thereby injured, then and in either or both events you will find for plaintiff for such damages, if any, as accrued by reason of such injuries."

The petition made no complaint of the cars into which the stock was loaded at Pecos, but avers that the cars furnished at Fort Worth were defective, and that the shipment was roughly handled between Fort Worth and Shreveport. It does not complain of any rough handling between Shreveport and Brandon. The animals were reloaded at Shreveport, and the evidence does not show the condition of the cars into which they were there placed, but plaintiff Hollebeke testified that there was no difference in the condition of the stock when they arrived at Brandon and when they reached Shreveport, except that the wounds upon them were "a little more affected, more swollen," when they arrived at Brandon. The foregoing evidence is not disputed. The court's charge must be considered with reference to the pleadings and this undisputed evidence. See cases cited, 10 Michie's Digest,

454. The jury, in view of the pleadings and evidence, must have understood and known that the cars referred to in the charge were those furnished at Fort Worth. The subsequent sentences in the charge refer to "said cars," and it is clear that the court is referring to injuries received in those cars. The evidence shows rough handling between Fort Worth and Shreveport and no injury after leaving Shreveport. Under the pleadings and evidence the charge was not calculated to mislead the jury, but it must have construed and understood the same as relating to the defective cars furnished at Fort Worth and the injury occurring between that point and Shreveport. The charge presents no reversible error. Bast v. Alford, 20 Tex. 226; Hawkins v. Cramer, 63 Tex. 99.

The cases cited by appellants in support of their contention that the charge was erroneous are not regarded as applicable.

[3] Error is also assigned to the court's charge upon the measure of damages. It is contended that Shreveport was the place at which the values should be fixed instead of Brandon, Miss. The bill of lading shows that Brandon was the final destination of the shipment. The charge properly instructed that the point of destination was the place for determining the difference in the values of the animals. Lancaster v. Rogers & Adams, 235 S. W. 643, recently decided by this court; Tex. & Pac. Ry. Co. v. Tracy, 38 Tex. Civ. App. 327, 85 S. W. 833; St. L., S. F. & T. Ry. Co. v. Adams, 55 Tex. Civ. App. 245, 118 S. W. 1155; Texas & Pacific Ry. Co. v. Shipman, 98 S. W. 449; M., K. & T. Ry. Co. v. Carpenter, 52 Tex. Civ. App. 585, 114 S. W. 900; Texas & Pacific Ry. Co. v. Stewart, 43 Tex. Civ. App. 399, 96 S. W. 106; G., H. & S. A. Ry. Co. v. Cobb & McCrory, 126 S. W. 63; H. & T. C. R. Co. v. Roberts, 60 Tex. Civ. App. 145, 126 S. W. 890; Scott v. Texas Cent. R. Co., 60 Tex. Civ. App. 281, 127 S. W. 849.

[4] Error is assigned to the action of the court in permitting one of the plaintiffs to testify to the condition of the stock upon arrival at Brandon and that five head died after they arrived there. This presents no error. The testimony was admissible; it being for the jury to determine whether the condition of the animals and death of five at Brandon was due to the injuries received between Fort Worth and Shreveport.

It is further insisted that the verdict is excessive. The testimony of the plaintiff Hollebeke amply supports the amount of damages assessed.

This disposes of all contentions made by appellants.

Finding no error, the judgment is affirmed.